Argued and submitted April 25, resubmitted In Banc July 12, affirmed August 8, reconsideration denied November 14, petition for review allowed December 18, 1990
(311 Or 13)
See later issue Oregon Reports

# STATE OF OREGON,
*Appellant,*

*v.*

# KELLI LAREE PAULSON,
*Respondent.*

(88-3113A-C-3; CA A61225 (Control))

# STATE OF OREGON,
*Appellant,*

*v.*

# SCOTT RAY PAULSON,
*Respondent.*

(88-3113B-C-3; CA A61226)
(Cases Consolidated)

795 P2d 611

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Peter Gartlan, Deputy Public Defender, Salem, argued the cause for respondents. With him on the brief was Sally L. Avera, Public Defender, Salem.

RICHARDSON, J.

Newman, J., specially concurring.

Edmonds, J., dissenting.

## RICHARDSON, J.

In these consolidated cases, the state appeals orders granting defendants' motions to suppress evidence seized pursuant to a search warrant. It contends that the evidence is admissible, because the information in the affidavit supporting the warrant was obtained while police were lawfully in defendants' apartment. We affirm.

Defendants are husband and wife. Wife called the 911 emergency number and reported that husband was experiencing medical problems, including periods when he would momentarily stop breathing. Two paramedics and a police officer responded to the call. The officer accompanied the paramedics pursuant to a police department practice that an officer respond to calls involving life threatening situations. When they arrived, wife directed them to a loft, where they found husband lying in bed. Conscious, he was agitated and experiencing high blood pressure, a fast respiratory rate and a fast pulse. A second officer, Nopanen, arrived shortly after treatment began and went up to the loft. Wife told one of the paramedics that husband had "snorted and shot up" at least one gram of cocaine over the last few hours. Husband also said that he had consumed cocaine. The paramedics noticed that there were a rolled-up dollar bill and white powder, which appeared to be cocaine, on a nearby dresser. Nopanen questioned wife about husband's ingestion of drugs and apparently obtained a limited consent to search. Nothing was discovered or seized during that search.

Husband was transported to a hospital, where he told Nopanen that he had ingested cocaine during the last three hours. Nopanen called the district attorney's office and was told that husband would not be prosecuted for possession on the basis of consumption. Nopanen talked to wife at the hospital and requested consent to search the apartment. She refused. The officers obtained a search warrant by telephone, ORS 133.545(5); ORS 133.555(3), on the basis of an oral affidavit in which Nopanen recited what defendants said in the apartment and his observation of the rolled-up dollar bill and the white powder and the fact that husband had consumed cocaine and had told him so at the hospital. During execution of the search warrant, the officers seized the bill and the white powder on the dresser, cocaine and cocaine paraphernalia.

Defendants moved to suppress all evidence seized under the warrant. The court granted the motions, relying on *State v. Watson,* 95 Or App 134, 769 P2d 201 (1989).[1] The state contends that the officers were lawfully in defendants' apartment, that the observations while in the apartment were lawful and, therefore, that the evidence seized pursuant to the warrant is admissible.

In *Watson,* the police found methamphetamine in the defendant's change purse during the investigation of a single car accident. In upholding suppression of the evidence, we explained the scope of police authority to enter protected areas during noncriminal investigations and the admissibility of evidence discovered during such intrusions:

> "[W]hen police act in a capacity other than criminal law enforcement, entry into protected areas may only be made pursuant to 'statutory or other authority from a politically accountable body.' *State v. Bridewell,* [306 Or 231, 239, 759 P2d 1054 (1988)]; *see also State v. Pidcock,* 306 Or 335, 341-42, 759 P2d 1092 (1988); *Nelson v. Lane County,* 304 Or 97, 101-06, 743 P2d 692 (1987). Only if that authority exists and if discovery [of evidence] otherwise meets the plain view exception to the warrant requirement is the evidence admissible. *Nelson v. Lane County, supra;* 304 Or at 104, n 5; *see also State v. Pidcock, supra.* When presented with situations not directly related to a criminal violation investigation, police may still enter protected areas to render aid or assistance, notwithstanding a lack of statutory authority, but, under Article I, section 9, any evidence discovered is inadmissible in a criminal prosecution. *State v. Bridewell, supra,* 306 Or at 239-40; *see also State v. Okeke,* 304 Or 367, 373, 745 P2d 418 (1987)." 95 Or App at 137-38.

In this case, the court found that the officers were lawfully in the apartment to render emergency medical assistance to husband. Nonetheless, under *State v. Bridewell, supra,* evidence discovered during a noncriminal investigation is only admissible in a criminal trial if the intrusion into a protected area was authorized by statute or a politically

---

[1] In its oral pronouncement, the court said that it was granting the motion to suppress because it found that the facts in the affidavit did not provide probable cause to support the warrant. However, in the written order, the court relied on our analysis in *Watson.* We review only the basis specified in the written order. *State v. Pryor,* 96 Or App 181, 184, 772 P2d 431, *rev den* 308 Or 158 (1989).

accountable body. The state does not point to any "statutory or other authority from a politically accountable body" to support entry by the police officers. Even if their entry could be characterized as necessary to render assistance to husband, incriminating evidence observed cannot be used for criminal law enforcement purposes. *State v. Bridewell, supra.*[2] The inadmissible evidence, including the statements made by both defendants at their residence, is not available to support an application for a search warrant. *State v. Donahue,* 93 Or App 341, 345, 762 P2d 1022 (1988), *rev den* 307 Or 303 (1989). Without that information, the affidavit lacks facts to support the warrant. The only other pertinent information in the affidavit was husband's statement at the hospital. It was not sufficient to establish probable cause to believe that there would be cocaine at the residence.

Affirmed.

**NEWMAN, J.,** specially concurring.

I concur in the court's opinion, except for the last sentence of note 2. I agree that *State v. Bridewell,* 306 Or 231, 759 P2d 1054 (1988), binds us, but I do *not* join in the implication that it was incorrectly decided.

**EDMONDS, J.,** dissenting.

The majority holds that these cases are controlled by *State v. Bridewell,* 306 Or 231, 239, 759 P2d 1054 (1988) and its progeny.[1] In *Bridewell,* a friend, after becoming concerned that the defendant might be injured, contacted police regarding his absence. The police went to the defendant's remote residence and found it empty and in disarray, with the front door open. Not finding the defendant, they walked to a shop building about 125 yards from the residence. Without calling out for the defendant, they entered the shop and saw marijuana plants in another room, through an open door. The

---

[2] The state appears to agree that *Bridewell* is troublesome to its case, *if not* controlling. Its primary argument is that *Bridewell* is wrong. Whether we agree or disagree with that critique, we are powerless to alter that part of jurisprudential history.

[1] Both *State v. Okeke,* 304 Or 367, 745 P2d 418 (1987) and *State v. Watson,* 95 Or App 134, 769 P2d 201 (1989) which are relied on by the majority, involved searches of purses for information for medical purposes without the consent of the owner. Here, in contrast, the wife invited the officers to enter the home.

defendant emerged from the room in which the plants had been seen and shut the door behind him. The deputies asked that he open the door, but he replied that they needed a warrant. When the deputies responded that they did not need a warrant because they had already observed the evidence, he opened the door. The deputies seized the evidence that they had observed. The Supreme Court held that, even though the officers had entered the premises in a community caretaking function, evidence arising from their "intrusion" should be suppressed, because a warrantless entry by police into private premises is a *per se* violation of the Fourth Amendment and the Article I, section 9, prohibition against unreasonable searches.

Here, defendant's wife called the 911 emergency number and requested emergency assistance for defendant's life threatening condition. Two paramedics were dispatched, and a Medford police officer also responded to the call. It is the policy of the Medford police department to respond to such situations, because its members are certified to administer emergency medical procedures and may be closer to the scene than an ambulance. It is also department policy for the officer to remain on the scene after the ambulance arrives to assist the paramedics until dismissed by them. When the paramedics and the police officer arrived, they pounded on the door to defendants' apartment. The wife opened it and directed them to an upstairs loft. Shortly thereafter, Officer Nopanen arrived and joined them in the loft. One paramedic testified that, if the officers had wanted to leave during the twenty minutes that he was treating husband, he would have requested that they stay and assist him. For purposes of treatment, the paramedic requested a sample of the drugs that the husband had consumed. He also directed the officer's attention to the dollar bill and white powder on the dresser. Nopanen sought to assist the paramedic in his questions to the wife and strictly complied with the scope of consent that was given by her and her subsequent withdrawal of that consent. She never asked either officer to leave.[2]

In *Bridewell,* the court said:

---

[2] As the husband was being placed on a gurney to be taken to the hospital, he said that he did not need medical treatment and asked everyone to leave.

"In situations not implicating criminal law enforcement functions and not justified by the emergency/exigent circumstances exceptions, law enforcement officers, like private individuals, also may enter to render emergency assistance. In the latter situation, however, *incriminating evidence arising from the intrusion by law enforcement officers must be suppressed.*" (Emphasis supplied; footnotes omitted.)

This case differs from *Bridewell,* because there was no "intrusion." An "intrusion" connotes "a trespass or encroachment: an undesirable or unwelcome bringing in or entering." *Webster's Third New International Dictionary* 1187 (unabridged 1971). The wife invited the paramedics and police officers into defendants' premises to assist the husband. Had she invited them to dinner and they had observed cocaine in plain view while there, I suspect that the majority would not argue that the constitutional protection against unreasonable searches is implicated. It was the intrusion in *Bridewell* that made the entry by the police tantamount to a warrantless search. It is the lack of intrusion that makes the entry here not a search. *Bridewell, State v. Okeke, supra,* n 1, and *State v. Watson, supra,* n 1, focus on the reason for the intrusion, *i.e.,* emergency medical purposes; that focus is not germane to a constitutional analysis unless there has been an intrusion.

The fact that Nopanen responded to the wife's invitation at a later time than the individuals who first were to the scene does not negate the nature of the entry. The emergency was still on-going when he arrived. Once in the loft, Nopanen did not intrude into areas to which the wife objected. His observations and the statement made by the wife that formed the basis for his affidavit in support of a search warrant were obtained while he was in a place where he had been invited to be. I would hold that evidence could properly be considered in determining whether probable cause existed for the issuance of a search warrant. The trial court erred in holding to the contrary.

Rossman, Riggs, and De Muniz, JJ., join in this dissent.