Argued and submitted March 6, 1991, decision of Court of Appeals reversed, order of the circuit court suppressing evidence vacated, case remanded to circuit court for further proceedings July 2, reconsideration denied September 29, 1992

STATE OF OREGON,
*Petitioner on Review,*

*v.*

KELLI LAREE PAULSON,
*Respondent on Review.*

(CC 88-3113A-C-3; CA A61225 (Control))

STATE OF OREGON,
*Petitioner on Review,*

*v.*

SCOTT RAY PAULSON,
*Respondent on Review.*

(CC 88-3113B-C-3; CA A61226;
SC S37568)
833 P2d 1278

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Peter Gartlan, Deputy Public Defender, Salem, argued the cause for respondents on review. With him on the response was Sally L. Avera, Public Defender, Salem.

GILLETTE, J.

## GILLETTE, J.

In this criminal case, one of the defendants called 9-1-1 for emergency assistance at the defendants' apartment. Police officers arrived with other emergency personnel in response to the call. A police officer entered with the emergency personnel, saw evidence of a crime in plain view, and obtained a search warrant based on his observations and on statements made by defendants in their apartment. A trial court suppressed all evidence obtained pursuant to the warrant. A divided Court of Appeals affirmed, holding that the police had no statutory authority to enter the apartment in response to a 9-1-1 call and that, because the police had no such authority, any evidence obtained as a result of their entry must be suppressed. *State v. Paulson*, 103 Or App 23, 795 P2d 611 (1990). We reverse.

Defendants Scott Paulson (Scott) and Kelli Paulson (Kelli), husband and wife, lived in an apartment in Medford. On October 3, 1988, Kelli called 9-1-1 and reported that Scott was having medical problems, including periods when he stopped breathing. Two paramedics were dispatched with the call "man down, possibly not breathing." The paramedics arrived at defendants' apartment complex, where they met a Medford police officer who already had arrived and was attempting to locate defendants' apartment. It appears from the evidence that the Medford police routinely dispatch officers to 9-1-1 calls involving life-threatening situations. The record shows that officers have special training in lifesaving techniques and normally are able to reach the scene more quickly than an ambulance, because the officers already are on the road.

Precisely what happened next is unclear. When the two paramedics and the officer arrived at defendants' apartment, Kelli opened the door in response to their knock. A paramedic testified that the officer probably was the one who knocked. Kelli invited at least the paramedics to come in, and directed them to an upstairs loft where Scott was lying in bed. Kelli testified that, when she opened the door, she saw only the paramedics and did not notice the officer until everyone was in the loft. However, on direct examination, Kelli also testified that the officer "followed [the paramedics] through [the door] after. They were on the run to go upstairs. I was

directing them to Scott upstairs, and the one officer came after." A second officer later walked into defendants' apartment and joined defendants, the paramedics, and the first officer in the loft.

The paramedics and the officer found Scott lying in bed, flushed and agitated, experiencing high blood pressure and a rapid pulse. At some point, Scott objected to the presence of both the paramedics and the police and argued that he did not require assistance. As treatment on Scott began, Kelli, overheard by the officers, told the paramedics that Scott had "snorted and shot up" at least one gram of cocaine over the last few hours. Scott was able to confirm this fact to the paramedics. The paramedics noticed a rolled-up dollar bill and white powder, which appeared to be cocaine, on a dresser next to the bed. They pointed out these items to the officers, but nothing was seized at the time.

Scott was transported to a hospital, where he told one of the officers that he had ingested cocaine during the last three hours. The officer asked Kelli for consent to a search of defendants' apartment. Kelli refused. The officer obtained a search warrant by telephone, ORS 133.545(5) and 133.555(3), based on the officer's oral affidavit reciting Kelli's and Scott's statements in the apartment, the officer's observation of the rolled-up dollar bill and the white powder, and Scott's admissions at the hospital. In executing the search warrant, the police seized the dollar bill, cocaine, and cocaine paraphernalia.

The state charged defendants with possession of a controlled substance, ORS 475.992(4), and frequenting a place where controlled substances are used, ORS 167.222. Defendants moved to suppress the evidence seized pursuant to the search warrant. They argued that the search warrant was based on information that, under the rule of *State v. Bridewell*, 306 Or 231, 759 P2d 1054 (1988), was obtained impermissibly. The trial court granted defendant's motion on the basis of *State v. Watson*, 95 Or App 134, 137-38, 769 P2d 201 (1989). In that case, the Court of Appeals held that, "when police act in a capacity other than criminal law enforcement, entry into protected areas may only be made pursuant to 'statutory or other authority from a politically

accountable body.' " (Citing *State v. Bridewell, supra,* 306 Or at 239.)

The state appealed. The Court of Appeals, sitting *in banc,* affirmed 6-4. The majority opinion agreed with the trial court's reliance on *State v. Watson, supra,* and *State v. Bridewell, supra,* stating that "[t]he state does not point to any 'statutory or other authority from a politically account-able body' to support entry by the police officers. Even if their entry could be characterized as necessary to render assistance to [Scott], incriminating evidence observed cannot be used for criminal law enforcement purposes." *State v. Paulson, supra,* 103 Or App at 27. The court held that "[t]he inadmissible evidence, including the statements made by both defendants at their residence, is not available to support an application for a search warrant." *Id.* With the only information validly obtained being Scott's admission at the hospital, the court ruled that the search warrant lacked probable cause. *Id.*

The dissent distinguished *State v. Bridewell, supra.* In the dissent's view, Kelli consented to the entry of the officer who accompanied the paramedics, and the officers who were in the apartment complied strictly with the scope of that consent. *State v. Paulson, supra,* 103 Or App at 28.

The state asserts that the Court of Appeals erred in relying on *State v. Bridewell, supra.* The state argues that Kelli's "consent to the officers' entry waived the Paulsons' constitutionally protected privacy and property interests with respect to that entry." Defendants respond that (1) the trial court implicitly found that Kelli did not consent to the police entry (a finding, defendants assert, that is accurate based on the facts); and (2) the Court of Appeals majority correctly held that *State v. Bridewell, supra,* controls this case.

The last of those contentions is answered easily. The suggestion that this case is governed by *State v. Bridewell, supra,* is in error. *Bridewell* was not a case in which police entry into a home allegedly occurred with the consent of the occupant. In *Bridewell,* the authority of the police to act as they did — if any existed — had to be derived from a source other than consent. *Bridewell* did not limit the authority of the police to act pursuant to the voluntary consent of a

citizen. We turn next to a brief review of the law of consent searches.

The parties have proceeded in this case on the basis that, when the police entered defendants' apartment, defendants had a privacy interest in their home — "the quintessential domain protected by the constitutional guarantee against warrantless searches," *State v. Louis*, 296 Or 57, 60, 672 P2d 708 (1983)[1] — and that such an entry was a search[2] — but that only begins the inquiry.

■    Normally, in order for a search to be constitutionally permissible, the police must have a search warrant. *State v. Campbell*, 306 Or 157, 163, 759 P2d 1040 (1988). In the present case, the police did not have a search warrant when they entered defendants' apartment. The evidence, however, is not to be suppressed automatically on that ground. Evidence is not suppressed unless the search was "unreasonable" under Article I, section 9, of the Oregon Constitution.

■ ■    A warrantless search by the police is "reasonable" under Article I, section 9, when the search falls into one or another of the recognized exceptions to the warrant requirement. *State v. Miller*, 300 Or 203, 225, 709 P2d 225 (1985), *cert den* 475 US 1141 (1986). One such exception is *consent*. "When there is consent to the search, no warrant is necessary." *State v. Pogue*, 243 Or 163, 164, 412 P2d 28 (1966). *Accord State v. Carsey*, 295 Or 32, 38, 664 P2d 1085 (1983); *State v. Newton*, 291 Or 788, 801, 636 P2d 393 (1981). Under

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The parallel federal rule is found in the Fourth Amendment, which provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[2] Because the state lost in both the trial court and the Court of Appeals, we do not consider alternative theories, such as an argument that the officers were in the apartment by invitation and that entry by invitation is not a search. *See State v. Hickmann*, 273 Or 358, 360, 540 P2d 1406 (1975) (state as appellant not entitled to raise on appeal arguments not made to the trial court).

the consent exception to the warrant requirement, the state must prove by a preponderance of the evidence that someone having the authority to do so voluntarily gave the police consent to search the defendant's person or property. *State v. Stevens*, 311 Or 119, 136-37, 806 P2d 92 (1991).

Defendants contend that the state has failed to prove consent in the present case. They claim that the trial court, because it granted defendants' motion to suppress the evidence, implicitly found that there was no consent here. We disagree. The basis of the trial court's ruling was its conclusion that the Court of Appeals' application of *State v. Bridewell, supra*, in *State v. Watson, supra*, controlled the present case. The court did not address the issue of consent. The court ruled as a matter of law, not as a matter of fact. The question whether Kelli consented to entry by the officers remains unresolved. We turn to a determination of whether there is evidence that defendants did, in fact, consent to the police entry.

■ There is evidence in this case that, if believed, would establish that the police had Kelli's consent to enter defendants' apartment: When Kelli called 9-1-1 and asked for emergency assistance for Scott, she did not limit her request to medical personnel. When the paramedics and the police arrived, Kelli opened the door and directed the group to the upstairs loft, where Scott was lying. Kelli testified that she never asked the police to leave, even after she first noticed one of the officers. The trial court could conclude from the foregoing that Kelli consented to the officers' presence. If there was consent, the officers' observations were permissible, and the warrant that issued based on those observations was valid. Because this factual question has not been addressed, the case must be remanded to the trial court for further proceedings.

■ Because the trial court might conclude, at a new evidentiary hearing that focuses on the issue of consent, that Kelli's initial request for help did not amount to consent to the officers' entry, or that there was some other basis for holding that the officers' observations were made in violation of defendants' constitutional rights, we address another matter. We note that, at the hearing on defendants' motions to suppress, counsel for the state repeatedly tried to focus the

trial court's attention on the concept of "inevitable discovery." The trial court flatly refused to consider that approach, directing counsel to confine her examination of her witnesses to what actually occurred.

The approach that the deputy district attorney was trying to present was premised on the idea that, even if the entry of the officers and their subsequent observation of incriminating evidence were held for some reason to be impermissible, thereby invalidating an ensuing search derived from the officers' observations, the same information would inevitably have been brought to the officers' attention by the emergency medical technicians, who were caring for Scott and whose presence on the premises was clearly consented to. Thus, under the state's theory, the same application for a search warrant, untainted by any impermissible police conduct, would have been made and the same search warrant would have issued.[3] The trial court was wrong to deny the state the right to make an evidentiary record on this alternative theory. On remand, the trial court shall permit the state to offer such evidence as it may have on this issue and to make findings based on the evidence offered.

The decision of the Court of Appeals is reversed. The order of the circuit court suppressing evidence is vacated. The case is remanded to the circuit court for further proceedings consistent with this opinion.

---

[3] The doctrine of "inevitable discovery" is recognized both in Oregon statutory and case law. ORS 133.683 provides:

"If a search or seizure is carried out in such a manner that things seized in the course of the search would be subject to suppression, and if as a result of such search or seizure other evidence is discovered subsequently and offered against a defendant, such evidence shall be subject to a motion to suppress unless the prosecution establishes by a preponderance of the evidence that such evidence would have been discovered by law enforcement authorities irrespective of such search or seizure, and the court finds that exclusion of such evidence is not necessary to deter violations of ORS 133.525 to 133.703."

See also State v. Miller, 300 Or 203, 225-27, 709 P2d 225 (1985) (recognizing doctrine). We express no opinion whether the record in this case either has or will establish a basis for applying the doctrine.