Argued and submitted May 3, 2001, decision of Court of Appeals and judgment of
circuit court reversed and case remanded to circuit court April 18, 2002

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## JOHN RICHARD COCKE,
*Petitioner on Review.*

(CC C9604-33280; CA A96903; SC S46978)

45 P3d 109

Robin A. Jones, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief was David E. Groom, State Public Defender.

Rolf C. Moan, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, and De Muniz, Justices.**

GILLETTE, J.

---

** Kulongoski, J., resigned June 14, 2001, and did not participate in the consideration or decision of this case; Riggs and Balmer, JJ., did not participate in the consideration or decision of this case.

## GILLETTE, J.

The issue in this criminal case is whether the police lawfully conducted a warrantless search of a private apartment in a large house. The search was intended to ensure the safety of police officers who were processing evidence seized in connection with the arrest of a tenant of one of the other apartments in the house. The trial court ruled that the warrantless search was a valid "protective sweep" of the house and, therefore, that evidence obtained as a result of that search was admissible against defendant, who was the tenant of the separate apartment. A divided Court of Appeals affirmed that ruling. *State v. Cocke*, 161 Or App 179, 984 P2d 321 (1999). We allowed review and now conclude that, on the facts presented, the police constitutionally were not justified in searching, on officer safety grounds, defendant's separate, private apartment. Accordingly, we reverse the decision of the Court of Appeals and the judgment of the circuit court.

The following facts are not in dispute. In April 1996, several Portland probation officers visited a probationer at the probationer's apartment in northeast Portland. The officers found the probationer in possession of marijuana and an assault-style knife and called for police backup to search the probationer's living quarters. The probationer's apartment was one of seven separate, individually rented apartments in a large house. The apartments were located variously on the two main floors, in the attic, and in the basement of the house. Each apartment was equipped with a deadbolt on its door. The tenants shared a large common area on the first floor of the house.

Two police officers arrived first. At that time, the probation officer was standing outside on the porch with the probationer and three or four other tenants. The police placed the probationer under arrest and advised him of his *Miranda* rights. They obtained his consent to enter the house and search his room, which was on the first floor, and the common area,[1] but the probationer informed the officers that he could

---

[1] The police officers obtained the consent of one of the other tenants to search his room as well. There is no issue in this case respecting either the validity or the scope of that consent.

not consent to the search of the separately rented apartments. During the search of the common area, the police found a large quantity of marijuana and some paraphernalia associated with marijuana and its sale.

Other police officers came to the scene to assist with the arrest and to catalogue the evidence that had been discovered, a process that likely would take about 25 to 30 minutes. The officers questioned the probationer about other people who still might be in the house and then concluded that it was necessary to "clear" the house. One officer testified that a sweep of the house was necessary because, a month earlier, he had heard from another officer that some occupants of the house had several firearms. In addition, police had been called to a neighboring house about a month earlier, because the neighbors claimed that a laser sight had been pointed from a window in the probationer's house. That laser sight incident raised concern, because laser sights often are affixed to guns to ensure accuracy in pinpointing a target.

The officers questioned the probationer about the layout of the house and then moved systematically throughout it, checking spaces where a person could hide. The officers pushed open and checked the rooms behind each unlocked door; they did not attempt to enter or search any locked room. There was an unlocked door off the hallway of the second floor, which opened to a stairway. After checking the rest of the second floor, two officers proceeded up the stairs, which led to defendant's attic apartment. When the first officer entered defendant's apartment, defendant was seated in a rocking chair and was talking on the telephone. The officer ordered defendant to stand. By that time, the second officer had entered the room. Both officers observed marijuana and marijuana paraphernalia in plain view.

The officers arrested defendant, advised him of his *Miranda* rights, and asked for and obtained defendant's consent to search his apartment. The officers then found more marijuana, some packaging materials, and two rifles.

Defendant was indicted on charges of manufacturing, delivering, and possessing a controlled substance, and manufacturing and delivering a controlled substance within

1,000 feet of a school. Before trial, defendant moved to suppress the evidence found as a result of the warrantless entry and search of his apartment.

The trial court denied defendant's motion to suppress on the ground that the officers discovered the evidence while conducting a valid "protective sweep" of the house. The court based that conclusion on its findings that the house was a "drug house" in a high crime area, that the officers had reason to fear that there were weapons in the house, and that the officers knew that there were residents of the house who had not been accounted for. The court acknowledged that the officers knew that the apartments were the separately rented residences of the various tenants.

Having concluded that the officers were justified in conducting the sweep, the court further concluded that the officers were entitled to be in defendant's room as part of the sweep, that some of the items that the officers seized were in plain view, and that defendant was not coerced into consenting to the further search of his belongings. Accordingly, the court ruled that the evidence seized from defendant's apartment was admissible at defendant's trial. Defendant was convicted on all charges.

On defendant's ensuing appeal, a majority of the Court of Appeals affirmed the trial court's evidentiary ruling. The court first held that the officers reasonably suspected that other people could have been in the house. *Cocke*, 161 Or App at 192. The court then held that, because some of the people in the house were engaged in drug activities and because, a month earlier, there had been a report of a possible firearm possession by one or more unknown residents in the house, the officers also reasonably were concerned about the danger of violence. *Id.* at 193-94. Moreover, because of the configuration of the house and the location of the drugs (in the common areas), the court concluded that the officers reasonably suspected "that the other residents of the house could be involved in drug activity and, thus, [would be] motivated to use force against the police working in the common area." *Id.* Based on those factors, the majority held that the "search of defendant's apartment to protect officer safety incident to probationer's arrest was permissible * * * [and t]he

trial court properly denied defendant's motion to suppress." *Id.* at 194.

We begin our analysis by observing, as this court has in the past, that a person's home, and the right to privacy in that home, is "the quintessential domain protected by the constitutional guarantee against warrantless searches." *State v. Louis*, 296 Or 57, 60, 672 P2d 708 (1983). That guarantee is found in Article I, section 9, of the Oregon Constitution, which provides:

> "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."[2]

No one questions that defendant's apartment was, for the purposes of the foregoing principles, his "home."

■ Defendant argues—and the state acknowledges—that, when the police entered defendant's apartment, they conducted a "search" as that term is used in Article I, section 9. Ordinarily, for a search to be constitutionally permissible, the police must have a search warrant. *State v. Paulson*, 313 Or 346, 351, 833 P2d 1278 (1992). The police had no search warrant when they entered defendant's apartment. That fact does not necessarily mandate suppression, however. Evidence obtained as a result of a warrantless search still may be admissible, if the search was "reasonable" under Article I, section 9, of the Oregon Constitution. *Id.*

■ It is, by now, well established that a warrantless search by the police is reasonable when the search falls into one of the recognized exceptions to the warrant requirement. *State v. Miller*, 300 Or 203, 225, 709 P2d 225 (1985). Those exceptions include, *inter alia*, consent, *Paulson*, 313 Or at

---

[2] The analogous federal rule is set out in the Fourth Amendment to the United States Constitution, which provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

351; probable cause accompanied by exigent circumstances, *State v. Herrin*, 323 Or 188, 193, 915 P2d 953 (1996); and searches incident to a lawful arrest, *State v. Hoskinson*, 320 Or 83, 86, 879 P2d 180 (1994). The state does not contend that the search at issue here fits any of the recognized categories. Instead, the state asserts that this court should recognize another, heretofore unacknowledged exception to the warrant requirement, namely, a "protective sweep" exception.

The United States Supreme Court announced the "protective sweep" doctrine in *Maryland v. Buie*, 494 US 325, 327, 110 S Ct 1093, 108 L Ed 276 (1990). In that case, the Supreme Court was confronted with circumstances in which police officers, who had a valid arrest warrant, went to a suspect's house to arrest him. While properly in the suspect's house, the officers flushed the suspect from where he had concealed himself in his basement. The suspect was arrested. Immediately thereafter, an officer went into the basement to ensure that no one remained there as a threat. While conducting that cursory search, the officer saw and seized evidence that later was used in the suspect's armed robbery trial. The Supreme Court upheld the search, ruling that a "quick and limited search of premises, incident to an arrest and * * * narrowly confined to a cursory visual inspection of those places in which a person might be hiding," *id.*, is constitutionally permissible when there exist "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334.

The Court of Appeals declined to adopt the *Buie* rule as such, in light of this court's choice to determine the reasonableness of searches incident to arrest by relying independently on the Oregon Constitution. *Cocke*, 161 Or App at 187-88, citing *State v. Caraher*, 293 Or 741, 750, 653 P2d 942 (1982). Nonetheless, after examining this court's and its own case law concerning the relationship of officer safety considerations to the reasonableness of a search, the Court of Appeals concluded that Oregon courts should employ a standard similar to that stated in *Buie*. The court articulated that standard as follows:

> "Article I, section 9, of the Oregon Constitution, authorizes officers, when making an in-home arrest, to take reasonable steps to protect themselves if the officer[s have] a reasonable suspicion, based on specific and articulable facts, that there could be persons present posing an immediate threat of danger to the officers or others. Such steps can include cursory searches of areas of a home beyond the immediate reach of the arrestee. We focus on the reasonableness of the measures in light of the circumstances as understood by the officers at the time."

*Cocke*, 161 Or App at 190. As noted, when the Court of Appeals applied that standard to the facts of the present case, the court concluded that the search of *defendant's* apartment was permissible as a search incident to the *probationer's* arrest. That was so, in the court's view, because the officers on the scene reasonably believed "that the other apartments could harbor persons who posed an immediate threat of harm" and the search was "a quick and cursory one, intended to ensure the safety of the officers effecting the arrest, as well as of other officers required to remain in the house to inventory the drugs and other evidence." *Cocke*, 161 Or App at 194.

■ Under the standard that the Court of Appeals articulated (and under the *Buie* rule from which it is derived), the police are entitled to search an *arrestee's* home. Yet, as noted, the Court of Appeals applied that standard to justify the search of *defendant's* home. This court, however, never has held that the scope of a proper search incident to the arrest of one person extends into another person's separate residence, in the absence of probable cause to search that other residence. Indeed, although this court never before has confronted that precise issue, this court's case law suggests that the opposite is the case. *See, e.g., State v. Davis*, 295 Or 227, 242-43, 666 P2d 802 (1983) (police officers standing at suspect's doorstep could not enter suspect's motel room without probable cause and without warrant, based on officers' need to protect themselves from possible danger posed by suspect; "reasonable suspicion" not sufficient); *State v. Ford*, 310 Or 623, 637-38, 801 P2d 754 (1990) (noncompliance with statutory "knock and announce" rule in executing warrant justified only if police reasonably suspect that compliance would create risk to their safety).

To be sure, this court has recognized the reasonableness, for purposes of the Oregon Constitution, of actions by police officers who are in a place where they are entitled to be and are responding to an immediate threat to the officers or to others who might be present. *See, e.g., Davis*, 295 Or at 242 (illustrating point); *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987) (officer who has reasonable suspicion that citizen whom officer has encountered poses immediate threat of serious physical injury to officer or others then present may take reasonable steps to protect himself or others). However, we cannot say that such reasonable actions would include entering the private apartment of another individual whose identity, connection to the scene, or even presence is unknown to the officers. The circumstances of this case do not approach the kind of immediacy that this court stated in *Bates* would be necessary to make a "protective" search reasonable. *Bates*, 304 Or at 524. We cannot justify a constitutional intrusion that is far more significant than the one in *Bates* on facts that are far less compelling.[3]

■■ This court often has stated that it is mindful of the dangers to which police officers daily are exposed in the line of duty, and we are reluctant uncharitably to second-guess the on-the-spot choices made by officers when making arrests. *Bates*, 304 Or at 524; *State v. Stanley*, 325 Or 239, 245, 935 P2d 1202 (1997); *State v. Ehly*, 317 Or 66, 81-82, 854 P2d 421 (1993). For that reason, we decline to hold that it is *per se* unreasonable, under Article I, section 9, for the police to search the nearby private residence of someone other than an arrestee to ensure officer safety, or that police must have probable cause in every case in which they do so. As this court explained in *Hoskinson*, 320 Or at 90, for purposes of officer safety searches incident to arrest, courts look to the totality of the circumstances to determine whether the precautions taken by the officers were reasonable at the time that the

---

[3] We note in passing that, even in *Buie*, the case on which the state places its greatest reliance, the police lawfully entered the house that later was searched to arrest one of the residents *of that house*. The issue presented in that case was whether the police were justified on officer safety grounds in searching an area beyond the immediate reach of the arrestee. The Court concluded that they were. However, nothing in the *Buie* decision suggests that the officers would have been entitled to search the private residence of another individual who was unconnected with the arrest.

decision to search was made. But this case is one in which the officers could articulate only a generalized concern that was based on stale information and that focused neither on defendant nor on his apartment. Those circumstances do not justify the police officers' intrusion into the privacy of defendant's apartment.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.