WALTERS, J.,
concurring in the judgment.
The majority holds that Article I, section 9, does not apply to the encounter in this case, in which a police officer approached defendant, asked for and obtained his identification, and investigated its validity. State v. Backstrand, 354 Or 392, 417-18, 313 P3d 1084 (2013). I agree that the Oregon Constitution permits such an encounter when it is constitutionally justified, as it was in this case. Thus, I agree with the result that the majority reaches and concur in the judgment. I do not agree, however, that the Oregon Constitution does not apply to such an encounter and therefore permits it even when it is not supported by constitutionally sufficient justification. I write to explain my reasoning.
In my view, Article I, section 9, applies to the encounter in this case because the officer’s communication and conduct would cause a reasonable person in defendant’s position to believe that he was the subject of a criminal investigation and therefore that he must stop, respond, and remain until the immediate investigation was complete.[1] Thus, the encounter constituted a “seizure” under Article I, section 9.
My analysis does not end there, however. In my view, Article I, section 9 also permits such seizures when officers have constitutionally sufficient reasons for imposing such restraint. When, for instance, an officer has probable cause to believe that an individual has committed a noncriminal traffic infraction, the officer is permitted to stop the individual and investigate whether he or she in fact committed the infraction. Such investigation may include reasonably *419 related actions, such as asking for and checking identification. State v. Watson, 353 Or 768, 781-82, 305 P3d 94 (2013). When an officer has a reasonable belief that an individual is a witness to and a victim of recent or ongoing criminal activity, the officer may temporarily detain the individual and, if the officer has an objectively reasonable basis to do so, may ask for and confirm the individual’s identification. State v. Fair, 353 Or 588, 614-15, 302 P3d 417 (2013). And, as Justice Brewer opines in his concurrence, an additional justification for a request for identification may be an officer’s action taken to fulfill the officer’s caretaking function. Backstrand, 354 Or at 436 (Brewer, J., concurring).
In this case, I would hold that the police officer’s conduct was constitutionally justified. Article I, section 9, permitted the officer to detain defendant for a brief period under Fair, or, perhaps, pursuant to his community caretak-ing responsibilities, and, therefore, the officer did not violate the Oregon Constitution.
The majority’s reasoning is different. The majority concludes that the encounter in this case was not a seizure. Consequently, the majority permits officers to initiate similar encounters without constitutional justification. Article I, section 9, has not before, and should not now, give officers that latitude.
In State v. Hall, 339 Or 7, 115 P3d 908 (2005), this court described the initial encounter between a police officer and the defendant as nonintrusive, but determined that when the officer asked for, obtained, and quickly returned the defendant’s identification, and then radioed for a “warrant check,” the nature of the encounter changed. Id. at 19. The court found it “difficult to posit” that a defendant who was cognizant that the officer was investigating whether he was the subject of any outstanding warrants would feel free to leave. Id. The court concluded that the officer’s inquiries and actions changed the situation from a noncoercive encounter to a “seizure” under Article I, section 9. Id.
In the present case, police officers similarly asked defendant for his identification, retained it briefly, and investigated its validity. Defendant similarly and reasonably would have believed that he was the subject of a criminal *420 investigation and therefore must remain until the immediate investigation was complete. It is a crime for a minor to misrepresent his or her age to secure a benefit which by law is denied to minors, ORS 165.805. Likewise, it is a crime for an individual of any age to act in a manner that prevents or attempts to prevent an officer from performing his or her lawful duties, ORS 162.247(l)(a), or to give false information to a police officer when a person is being cited for a crime, ORS 162.385, or to an officer who is enforcing motor vehicle laws, ORS 807.620. Although defendant did not commit any of those crimes, he reasonably would have believed that the officer’s investigation of the validity of his identification was a part of an investigation of one or more of those crimes, and, as in Hall, that he was not free to leave. See Aidan Taft Grano, Casual or Coercive ?: Retention of Identification in Police-Citizen Encounters, 113 Colum L Rev 1283, 1309 (2013) (“When police retain an individual’s identification, the act could be conceived either as a physical restraint (seizure of identification) or as a show of authority (seizure by identification).”) (emphasis in original); Josephine Ross, Can Social Science Defeat A Legal Fiction? Challenging Unlawful Stops Under the Fourth Amendment, 18 Wash & Lee J Civil Rts & Soc Just 315, 336 (2012) (citing to study indicating that a “majority of respondents would not feel free to leave a police officer who questioned them”); David K. Kessler, Free To Leave? An Empirical Look at the Fourth Amendment’s Seizure Standard, 99 J. Crim L & Criminology 51, 53-54 (2009) (presenting empirical evidence that people do not feel free to leave when being interrogated by officers); Janice Nadler, No Need to Shout: Bus Sweeps and the Psychology of Coercion, 2002 Sup Ct Rev 153, 155 (2002) (“In many situations where citizens find themselves in an encounter with the police *** a reasonable person would not feel free to terminate the encounter.”).[2]
The majority disagrees. The majority characterizes the officer’s inquiries and actions as “no more than seeking] *421 the individual’s cooperation through noncoercive questioning and conduct.” 354 Or at 417. The majority then concludes that “something more” is required to make the officer’s investigation a seizure. Id. at 417. The majority does not overrule, clarify, or distinguish Hall, nor does it now “posit” that an individual who reasonably would believe that he or she was subject to a criminal investigation would feel free to leave. Id. at 412. Rather, the majority reasons that a reasonable person in defendant’s position would “expect” to be questioned about his or her age, to produce proof of age, and to have its validity investigated, id. at 415, and would deem such investigation “appropriate,” id. at 415 (emphases added). Further, the majority concludes, the officer’s retention of defendant’s identification did not extend “beyond a reasonable period,” id. at 416 (emphasis added), did not constitute a “significant” restraint on defendant’s liberty, and therefore was not a seizure. Id. at 417 (emphasis in original).
The change in analysis from Hall to Backstrand is striking. Not only does it break faith with Hall, it does not meet the challenge that Justice Harlan set and that this court quoted in State v. Campbell, 306 Or 157, 165, 759 P2d 1040, 1044-45 (1988) (quoting United States v. White, 401 US 745, 786, 91 S Ct 1122, 1143, 28 L Ed 2d 453 (1971) (Harlan, J., dissenting)):
“[I]t is the task of the law to form and project, as well as mirror and reflect, [and] we should not, as judges, merely recite the expectations and risks without examining the desirability of saddling them upon society.”
Article I, section 9, prohibits unreasonable seizure. The first step in an analysis under that provision, therefore, is whether a police officer has restrained an individual’s liberty and thereby effected a seizure. See State v. Ashbaugh, 349 Or 297, 308-09, 244 P3d 360 (2010) (so holding); State v. Holmes, 311 Or 400, 407, 813 P2d 28 (1991) (seizure occurs when an officer “temporarily restrains a person’s liberty”). The second step is whether that seizure is constitutionally justified or otherwise reasonable. Ashbaugh, 349 Or at 309. The majority, in terms today’s Oregonians would understand, puts the trailer before the bike: The majority measures whether there has been a seizure by factors that more *422 appropriately address the second step in the analysis— whether the officer who effects the seizure has acted “reasonably.” See Watson, 353 Or at 783-84 (reasonableness of duration of records and warrants check considered in deciding whether seizure was reasonable, not in deciding whether seizure occurred).
In Fair, also decided this year, the court explained that a seizure occurs when an officer engages in a “show of authority that would cause a reasonable person in [the] defendant’s circumstance to believe that [his or] her liberty had been significantly restricted.” 353 Or at 615 (emphases added). The majority now states that, to constitute a seizure, the officer’s show of authority must cause a “reasonable person to believe that the officer intentionally and significantly has restricted, interfered with, or otherwise deprived the citizen of the citizen’s liberty or freedom of movement!’ 354 Or at 403 n 11 (emphases added). In this case, I would expect the court to begin, under either formulation, by considering whether the officer’s show of authority would cause a reasonable person in defendant’s position to believe that the officer had restricted his freedom of movement, and then to decide whether the restraint, if any, was justified and otherwise reasonable. The majority does not do so. Instead, it points to the factors that may be relevant at the second step of the analysis — whether the seizure was reasonable— to decide that no seizure occurred.
As noted, the majority explains that no seizure occurred because a young person present in an age-restricted shop reasonably “expectfsj’ questions about his or her age and finds them “appropriate,” id. at 415, and reasonably “expectfsj’ that if he or she produces identification, a police officer will examine it and take steps to verify its validity, id. at 417 (emphases added). The majority concludes that the officer’s retention of defendant’s identification was of “reasonable” duration and did not constitute a “significant” restraint on defendant’s liberty. Id. at 416 (emphasis added). The majority thereby determines whether a seizure occurred, not by analyzing whether a reasonable person would believe that an officer had restricted his or her liberty, but by determining whether a person subject to such restraint would believe the officer to have acted reasonably.
*423 To illustrate the significance of the shift in focus from restraint to reasonableness, I pose the following hypothetical circumstance — a circumstance in which a police officer informs an individual that the officer is conducting a criminal investigation and, as a part of that investigation, explicitly directs the individual to remain and produce identification. In that circumstance, I venture that the majority would hold that the officer had seized the individual because the officer’s show of authority would cause a reasonable person to believe that the officer had restricted his or her freedom of movement. See id. at 410-12 (discussing cases in which the court held police action “sufficiently coercive to result in a seizure”). I also venture that the majority would consider that explicit communication to be a seizure without regard to whether the individual expected it or considered it appropriate, and even if the officer’s retention of the identification was not of unreasonable duration.
In the circumstance in which a police officer does not explicitly order an individual to halt and produce identification, but approaches the individual and requests, obtains, and investigates the individual’s identification, the question should be whether the officer nevertheless communicates that the individual is not free to leave. See Nadler, 2002 Sup Ct Rev at 188 (“For example, citizens generally do not interpret ‘Can I please see your license and registration?’ as spoken by a police officer as a genuine request; it is a command, and everyone understands this.”).
In urging that analysis, I do not challenge the majority’s statement of an objective test — whether the officer conveys a message that would cause a reasonable person to believe that the officer had restricted the person’s freedom of movement. I also do not mean to imply that a seizure occurs whenever “an individual — for reasons personal to that individual — feels obliged to cooperate with the officer simply because of the officer’s status.” 354 Or at 402.1 agree that the focus must be on the message that the officer conveys, and that when an officer conveys only his or her status, the officer does not effect a seizure, even though an individual may feel it would be polite to remain. The point that I want to make is that, when a court looks at the message that an officer conveys, the court should look at whether the officer *424 conveys a message of restraint, not at whether the officer’s message was expected, appropriate, or reasonable.
I am not sure why the majority focuses its inquiry on reasonableness rather than restraint.[3]1 do know that in its discussion of the reasons that a seizure did not occur in this case, the majority introduces the notion that, when an officer “requests” an individual’s identification and checks its veracity, the individual “consents” to the officer’s conduct in a way that is “akin to when a person gives valid consent to search.” Id. at 413.
In the search context, consent makes a search constitutionally permissible by demonstrating that the search, even though warrantless, is reasonable. State v. Paulson, 313 Or 346, 351, 833 P2d 1278, 1281 (1992). Consent does not make a search into noncoercive action to which Article I, section 9, does not apply. If the majority were to use consent in the seizure context in the same way that it considers it in the search context, it could be relevant to the reasonableness of the seizure, but would not make a coercive stop into “mere” conversation.[4] Perhaps for that reason, this court has not previously used consent as a factor in determining whether a seizure has occurred, and the majority errs in offering an individual’s “expectation” that an officer will check the *425 veracity of proferred identification as a consideration here. This court should adhere to the principle that “the privacy protected by Article I, section 9, is not the privacy that one reasonably expects but the privacy to which one has a right” Campbell, 306 Or at 164 (emphases in original).
The majority also errs in three other ways. First, the majority errs in concluding that, in the circumstances presented here, asking a person’s age and requiring proof of age is not “significantly beyond that accepted in ordinary social intercourse.” 354 Or at 415 (quoting Holmes, 311 Or at 410). Although bartenders or clerks may ask for proof of age when a young-looking person enters a bar or makes a purchase, it is the patron who initiates the encounter and seeks the benefit. In ordinary social intercourse, a stranger does not approach another and ask for proof of identification. Many reasonable people expect others to leave them alone unless they seek or need assistance, and Article I, section 9, protects that right to personal privacy.
Second, the majority fails to consider the ways in which its decision may encourage both the public and the police to act in ways that are contrary to societal interests. It is in the best interest of society that the public cooperate with police investigations and stop, respond, and remain until such an investigation is complete. By holding that an individual who reasonably believes that he or she is being subjected to such investigation is, instead, free to leave, the majority encourages public conduct that is contrary to that interest. It also is in the best interest of society that the public respect the police. By holding that officers are permitted to approach members of the public and ask for, obtain, and investigate their identification without constitutionally sufficient justification for that conduct, the majority encourages officers to act in ways that could diminish the esteem in which they are and should be held.
Third, the majority fails to state a standard for determining whether a seizure has occurred that all can understand and follow. In Hall, the police officer requested that the defendant produce identification, and then conducted a warrants check. The court nonetheless held that the officer had seized the defendant. 339 Or at 19. In this *426 case, the officer made the same request and conducted a similar investigation, but the majority holds that the officer did not seize defendant. 354 Or at 413-14. The majority holds that the officer merely sought defendant’s cooperation. It is not easy to discern why the officer in Hall did “more.” Id. at 417.1 urge a brighter line and a rule that, when an officer approaches a member of the public and requests, obtains, and investigates that individual’s identification in circumstances in which the individual reasonably would believe that he or she is the subject of a criminal investigation, the officer seizes the individual unless the officer clearly explains that the individual is free to leave and need not respond or remain.[5] Under that rule, phrasing and after-the-fact-matching would not determine constitutional rights. And, just as importantly, an officer with a constitutional basis for taking those actions, like the officer in this case, would be free to detain the individual for as long as reasonably necessary to complete the immediate investigation.
Because I believe that, in the circumstances presented in this case, Article I, section 9, required that the police officer have a constitutionally sufficient justification to approach defendant and ask for, obtain, and investigate the validity of his identification, I cannot join in the majority’s reasoning. However, because I believe that the officer in this case was constitutionally justified in temporarily seizing defendant, I respectfully concur in the judgment.
Baldwin, J., joins in this concurring opinion.

 I understand that the trial court found that the officer was not investigating defendant for any wrongdoing, but was investigating whether a business owner was committing a crime by permitting defendant to enter or remain in the business and whether defendant was a potential victim of that crime. However, the officer did not explain the nature of his investigation to defendant.

 I do not cite this research to demonstrate that many people feel an internalized inclination to cooperate with police officers, but to demonstrate that, in a circumstance in which an officer asks for, obtains, and investigates a person’s identification, reasonable people would conclude that the officer had restrained their liberty.

 It could be that what I perceive as a shift in focus is not so much a shift from Hall, but a return to Holmes and its discussion of what is “accepted” in social intercourse. Holmes, 311 Or at 410. If so, then my criticism in this case is a criticism of Holmes as well. What is accepted among peers does not tell a court what is communicated by a police officer. Although this case may not present this court with an opportunity to overrule or reconsider Holmes, that does not mean that we should extend its analysis. In Hall, which this court decided after Holmes, this court correctly focused on the message that an officer conveys by his or her exercise of authority. We should adhere to that reasoning.

 The majority also states that “[t]he person who waits while a consent search is completed is not thereby seized for purposes of Article I, section 9.” 354 Or at 413. However, I do not understand the majority to take the position that defendant in this case consented to a search. If the officer had asked defendant for consent to search, and if a reasonable person in defendant’s situation would understand that he or she was being searched, that would be another reason that a reasonable person would conclude that he or she was the subject of a criminal investigation and was not permitted to leave. Moreover, if the majority’s proposition were determinative, then, contrary to the court’s decision in State v. Painter, 296 Or 422, 425-26, 676 P2d 309, 312 (1984), a defendant who proffered identification in response to an officer’s request would not be seized, even though the officer retained the identification for the entire time necessary to complete the investigation.

 I understand that an individual could still feel, as a result of his or her own internal belief system, that he or she should remain. However, whether a seizure occurs depends on the message that an officer conveys to a reasonable person, and, when an officer explicitly informs an individual that he or she is free to go, contrary feelings are not reasonable in the constitutional sense.