Argued and submitted March 8, decision of the Court of Appeals and order of the circuit court affirmed June 23, 1994

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## JAMES R. WEAVER,
*Respondent on Review.*

(CC C9103-31294; CA A71768; SC S40895)

874 P2d 1322

Brenda J P Rocklin, Assistant Attorney General, Salem, argued the cause for petitioner on review. With her on the petition were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

John R. Ransom, of Ransom, Blackman & Weil, Portland, argued the cause and filed the response for respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

VAN HOOMISSEN, J.

Gillette, J., concurred and filed an opinion.

## VAN HOOMISSEN, J.

■ The state seeks review of a Court of Appeals' decision that upheld the trial court's order granting defendant's pretrial motion to suppress evidence seized by the police during a warrantless search of defendant's store. The Court of Appeals, *in banc*, affirmed the trial court's decision that the police invaded defendant's constitutionally protected privacy interests when they searched for and seized evidence without a warrant and before obtaining defendant's consent, and held that that evidence must be suppressed. *State v. Weaver*, 121 Or App 362, 366, 854 P2d 962, *adhered to on reconsideration*, 124 Or App 615, 863 P2d 1273 (1993). The issue is whether defendant's written consent to search validated any search or seizure that occurred before defendant gave his consent. For the reasons that follow, we hold that it did not. Accordingly, we affirm the decision of the Court of Appeals and the order of the trial court.

■ Determination of the legality of searches and seizures depends largely on the facts of each case. *State v. Ehly*, 317 Or 66, 74, 854 P2d 421 (1993). The following facts are supported by the record and are consistent with the trial court's ultimate conclusions.[1] About noon on November 28, 1990, several police officers entered defendant's secondhand store to determine whether the store was in compliance with certain county ordinances. Those ordinances require secondhand dealers who purchase certain designated property — such as guns, jewelry, and audio equipment — to complete a prescribed report (PS51) on each purchase, to forward such reports daily to the police, and to retain the purchased property for at least 15 days before resale. *See* Multnomah County Code § 6.81.080-.090 (so providing).[2] The police did not

---

[1] This court is bound by the trial court's findings of historical fact if they are supported by evidence in the record. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). When the trial court has failed to make express findings on all pertinent facts and there is conflicting evidence in the record as to those facts, this court will presume that the trial court found facts consistent with its ultimate conclusion. *Id.* at 126-27 (citing *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968)).

[2] Multnomah County Code § 6.81.110 provides:

"Upon presentation of official identification, the Multnomah County Sheriff's Office or the Manager may enter onto the business premises of any person with an occasional secondhand dealer or secondhand dealer permit to ensure compliance with the provisions of Chapter 6.81. The inspection shall be for the

obtain a search warrant before commencing the compliance check.

The November 28 compliance check came about because, in October 1990, the police had executed a search warrant at defendant's store to look for stolen property. During that search, Sergeant Merrill instructed Deputy Hutchison on how to check for compliance with Multnomah County Code § 6.81.080-.90. Sergeant Merrill randomly selected 31 PS51 reports that had been prepared by defendant's employees. The officers concluded that eight of the 31 PS51 reports had been filled out incorrectly. The officers decided to carry out a more extensive compliance check later.

When the police arrived at defendant's store on November 28, the police asked the store manager for consent to search, but the manager did not consent and referred the police to defendant. Deputy Hutchison then telephoned defendant and asked for his consent to search. Defendant asked Deputy Hutchison to come to the place where defendant was working away from his store to discuss the matter. Deputy Hutchison agreed and he and another officer went to meet defendant.

Other officers remained at the store. Before 2 p.m., those officers seized defendant's Firearms Acquisition and Disposition Log,[3] took it to their office and copied it, brought it back to the store, and used it to check the guns at the store against the PS51 reports.[4] The officers then began seizing guns from defendant's store as they uncovered problems with the required paperwork.

---

limited purpose of inspecting any regulated property purchased by the dealer, held by the dealer pursuant to Section 6.81.090, or the records incident thereto. Any such inspection shall only be authorized to occur during normal business hours."

The state concedes that that ordinance does not authorize the *seizure* of any property.

[3] Federal law requires that the Firearms Acquisition and Disposition Log be maintained by each licensed firearms dealer "at his place of business." 18 USC § 923(g)(1)(A) (1988).

[4] The trial court made an express finding that defendant's Firearms Acquisition and Disposition Log was seized before 2 p.m. This court is bound by that finding, because there is evidence in the record to support it.

Meanwhile, Deputy Hutchison met with defendant, seeking his consent to search the store. Deputy Hutchison gave defendant a standardized consent form. Defendant then telephoned his lawyer, asking for advice as to whether he should sign the consent form. Deputy Hutchison also spoke with defendant's lawyer on the telephone and read to him a portion of the consent form. As a result of that conversation, Deputy Hutchison amended the consent form to read:

"CONSTITUTIONAL RIGHTS WARNING:
SEARCH BY CONSENT

"BEFORE ANY SEARCH IS MADE,
YOU MUST UNDERSTAND YOUR RIGHTS

"(1) You may refuse to consent to a search and may demand that a search warrant be obtained prior to any search of the premises described below.

"(2) If you consent to a search, anything of value as evidence seized in the course of the search can be used in court against you.

"I HAVE READ THE ABOVE STATEMENT OF MY RIGHTS AND AM FULLY AWARE OF THESE RIGHTS.

"I HEREBY CONSENT TO A SEARCH WITHOUT WARRANT OF THE FOLLOWING (DESCRIBE PREMISES, AUTO OR OTHER SUBJECT OF SEARCH): *ENTIRE PREMISE OF ABE'S SECONDHAND STORE. FOR: ALL USED FIREARMS AND CORRESPONDING PAPER RECORDS; ONLY THOSE JEWELRY ITEMS + PAPERWORK WITH COMPLIANCE IRREGULARITIES, AND ONLY THOSE OTHER ITEMS OF REGULATED PROPERTY + PAPER RECORDS WITH COMPLIANCE IRREGULARITIES. BY DEPUTIES* OF THE DIVISION OF PUBLIC SAFETY, MULTNOMAH COUNTY, OREGON.

"I HEREBY AUTHORIZE THESE OFFICERS TO SEIZE ANY ARTICLE WHICH THEY CONSIDER TO BE OF VALUE AS EVIDENCE.

"THIS STATEMENT IS SIGNED OF MY OWN FREE WILL WITHOUT ANY THREATS OR PROMISES HAVING BEEN MADE TO ME."

The emphasized passage was added as a result of Deputy Hutchison's conversation with defendant's lawyer. At 2 p.m., defendant signed the amended consent form.

As a result of the compliance check and the seizure of the guns, defendant was charged with 52 counts of failing to register the transfer of handguns. ORS 166.420. He also was charged with 249 counts of failing to register the transfer of used firearms. ORS 166.427.

Before trial, defendant moved to suppress the evidence seized during the compliance check, on the ground that the seizures violated Article I, section 9, of the Oregon Constitution.[5]

At the hearing on the motion to suppress, defendant testified that he signed the consent form because his lawyer advised him to do so. Defendant's lawyer testified:

"I advised my client to consent to an inspection, to a search of the premises, but to a seizure of only those items stolen, contraband, as the purpose of the search was explained to me by Officer Hutchison."

The trial court specifically stated that it believed the lawyer's testimony on that point. The court held that defendant had consented only to a search for stolen property, but not to the seizure of evidence of any recordkeeping violation. As an alternative basis for granting defendant's motion to suppress, the trial court held that defendant's consent, given at 2 p.m., did not justify any search or seizure that had occurred *before* that time. The state appealed. *See* ORS 138.060(3) (the state may appeal a pretrial order suppressing evidence).

The Court of Appeals, *in banc*, affirmed the trial court's ruling:

"The evidence supports a finding that the officers began searching for and seizing evidence well before defendant signed the consent form. The officers invaded defendant's constitutionally protected privacy interests when they began searching and seizing evidence without a warrant, without consent and without any other exception to the warrant requirements of Article I, section 9, and the Fourth Amendment. The fact that defendant subsequently consented does

---

[5] Article I, section 9, of the Oregon Constitution, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched and the person or thing to be seized."

not vitiate the unlawfulness of a search and seizure that violated the state and federal constitutions at its inception." *State v. Weaver, supra,* 121 Or App at 366 (footnote omitted).

Four judges dissented, explaining that,

"when the search began, it was unauthorized. The trial court and the majority say that that fact ends the inquiry. They err because they fail to consider whether the search and seizure that occurred before the consent was signed fall within the purview of the consent. * * * A knowing consent made subsequent to the inception of the search and seizure could relate back to the beginning of the search and act as a waiver of defendant's section 9 rights regarding the privacy interests that were invaded before the consent form was signed." *Id.* at 371-72 (Edmonds, J., dissenting).

On reconsideration, the Court of Appeals examined the case in the light of this court's decision in *State v. Rodriguez,* 317 Or 27, 854 P2d 399 (1993), and concluded that defendant's consent did not relate back to justify any earlier search or seizure. *State v. Weaver, supra,* 124 Or App at 617-18. We allowed the state's petition for review.

The state contends that the Court of Appeals erred in creating what the state characterizes as a *per se* rule that warrantless searches and resulting seizures are always unreasonable when consent is obtained after the search has begun. The question is: whether defendant's written consent to search validated any search or seizure that occurred before defendant gave his consent. The state argues that, because defendant voluntarily consented to a search and his consent was not the result of exploitation of any unlawful police conduct, the search and seizures here were lawful regardless of the timing. The state concedes that, in giving consent, defendant did not specifically consent to any search or seizure that already had occurred before he signed the consent form. The state asserts, however, that that point is not dispositive, because the consent was not obtained as a result of exploitation of any prior unlawful police conduct.

Because the parties have made no statutory arguments and we have found no dispositive statute, we first consider defendant's claim under Article I, section 9, of the Oregon Constitution. *See State v. Rodriguez, supra,* 317 Or at

32 (court addresses subconstitutional arguments before constitutional arguments).

■ Normally, in order for a search to be constitutionally permissible, the police must have a search warrant. In the present case, the police did not have a search warrant when they entered defendant's store. The evidence, however, is not to be suppressed automatically on that ground. Evidence is not suppressed unless the search was "unreasonable" under Article I, section 9, of the Oregon Constitution. A warrantless search by the police is "reasonable" under Article I, section 9, when it falls into one or another of the recognized exceptions to the warrant requirement. One such exception is *consent*. When there is consent to the search, no warrant is necessary. Under the consent exception to the warrant requirement, the state must prove by a preponderance of the evidence that someone having the authority to do so voluntarily gave the police consent to search the defendant's person or property and that any limitations on the scope of the consent were complied with. *State v. Paulson*, 313 Or 346, 351-52, 833 P2d 1278 (1992).

■ Cases involving consent searches may be sorted into several general categories: those involving questions of the *voluntariness* of the consent,[6] those involving the *authority* of the party consenting to the search,[7] those involving questions of the *scope* of the consent,[8] and those "in which suppression of evidence obtained during a consent search may be necessary to vindicate a defendant's rights that were violated by earlier, unlawful police conduct." *State v. Rodriguez, supra*, 317 Or at 39 (analyzing issue of consent based on exploitation of unlawful police conduct).

The state maintains that a consent to search need not always occur before the search begins. The state further argues that, assuming that the officers' conduct before defendant gave consent was unlawful, the evidence seized should

---

[6] Defendant does not argue that his consent was coerced, and thus we need not focus on the question of "voluntariness."

[7] "Authority" to consent is not an issue in this case.

[8] Regarding the "scope" of the search and the seizure, the parties dispute the scope of the consent in terms of what could be seized. As will be discussed below, we view the dispositive "scope" question in this case to relate only to the *timing* of the search and seizure.

be suppressed only if the later consent was involuntary or if it was the result of exploitation of prior unlawful police conduct. For that proposition, the state cites *State v. Rodriguez, supra,* and *State v. Quinn,* 290 Or 383, 623 P2d 630 (1981).

The state argues that this case is like *State v. Quinn.* In that case, the police conducted an unlawful warrantless search of the defendant's car after the defendant had been arrested and jailed and his car had been impounded. That search resulted in the discovery of a woman's underwear. 290 Or at 393. The police later asked the defendant to consent to a search of his car. The defendant agreed, and the police then searched the car again and seized the underwear, which eventually was used to connect defendant to a homicide. This court stated:

> "An otherwise valid consent search may nevertheless be invalid if it is tainted as a result of earlier unlawful police conduct. This consent follows an unlawful search. The police knew about and sought the underwear due solely to their observations during that search. Although the underwear might not have come to light but for the earlier search, it is also true that defendant was unaware at the time he gave consent that the underwear had been found. That fact did not in any way affect defendant's decision to give or withhold his consent. The next issue, therefore, is whether unlawful police activity which leads the police to seek defendant's consent to search, but does not influence the defendant in giving that consent, taints the consent so as to require exclusion of the fruits of the consent search." *Id.* at 394.

In concluding that the evidence seized during the consent search need not be suppressed, this court considered the fact that the consent was not given because of police exploitation of the prior unlawful conduct, that the unlawful intrusion into the defendant's privacy was slight because the car had been impounded, and that the failure to obtain a search warrant arose from a mistake of law rather than an intention to circumvent the warrant requirement. *Id.* at 396-97.

*State v. Quinn* is distinguishable from this case, because it involved two distinct searches. The first was an unlawful, nonconsensual search. The issue in *Quinn* was whether a second search, carried out after consent was obtained, also was unlawful. The case at hand differs, because

it involved one continuous course of police conduct that began before defendant consented to anything.[9]

In *State v. Rodriguez, supra,* 317 Or at 37, this court assumed, without deciding, that a defendant's arrest was an unreasonable seizure under Article I, section 9, but still concluded that "guns seized following that arrest were nonetheless admissible in evidence, because defendant consented to the search that uncovered the guns, and that consent was not obtained by exploitation of the unlawful conduct, if any." Again, that case is distinguishable from the present case. In *Rodriguez,* the consent was obtained *before* any search. The issue in that case was whether evidence discovered *after* the consent was obtained must nevertheless be suppressed because of prior unlawful police conduct that was distinct from the search itself. The issue in this case is whether defendant's written consent to search validated any search or seizure that occurred before defendant gave his consent.

The Court of Appeals declared here that defendant's consent did not validate the search and seizure that, at its inception, violated defendant's Article I, section 9, rights. *State v. Weaver, supra,* 121 Or App at 366. A dissent disagreed and framed the issue as "whether the search and seizure that occurred before the consent was signed fall within the purview of the consent." *Id.* at 371 (Edmonds, J., dissenting).

That, however, does not necessarily lead to the conclusion that the evidence in this case should not have been suppressed. Properly understood, the true issue here is the *scope* of defendant's consent. *See, e.g.,* 3 LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* 160, § 8.1(b) (1987 & Supp. 1994) ("When the police are relying upon consent as the basis for their warrantless search, they have no more authority than they have been given by the consent."). The scope of a consent is to be determined by the consenting party. It is possible for a consent to "relate back" to the beginning of a search or seizure that otherwise would be unlawful. For a consent to conduct a search retroactively to

---

[9] Our disposition of this case does not require us to reexamine whether *State v. Quinn,* 290 Or 383, 623 P2d 630 (1981), remains a valid statement of search and seizure law that may be relied on in the future.

validate earlier police activity, however, there must be evidence that the person giving the consent intended the consent to be retroactive. In this case, there is no evidence in the record indicating that defendant intended his consent to be retroactive. The trial court's conclusion that defendant's consent was not retroactive therefore is supported by evidence in the record.

The state has not proved by a preponderance of the evidence that the scope of defendant's consent included the evidence seized before defendant gave his consent to search. The state does not argue that the evidence is admissible if the pre-consent warrantless search and seizures were not within the scope of defendant's consent. Accordingly, the trial court did not err in ordering that the evidence seized during the compliance check be suppressed.

The decision of the Court of Appeals and the order of the circuit court are affirmed.

**GILLETTE, J.,** concurring.

I join in the opinion of the court. I write separately to emphasize what I perceive to be the pivotal sentence of the opinion and to offer a warning to those who might be tempted to rely heavily on a decision of this court that the majority opinion discusses today.

First, as to the pivotal sentence. We state today, concerning the scope of a consent to search: "For a consent to conduct a search retroactively to validate earlier police activity, * * * there must be evidence that the person giving the consent intended the consent to be retroactive." 319 Or at 221-22. We then go on to discuss the evidence in this case and the facts found from it by the trial judge. *Id* at 222. I do not wish the latter discussion to mask the importance of the earlier sentence, however.

The effect of our decision today is to say that, although the scope of a consent to search is a question of fact, *in the absence of any evidence as to that issue, the default outcome is that a consent is treated for the purposes of Article I, section 9, of the Oregon Constitution, as being intended to be prospective only*. This means, in any case in which the prosecution wishes to rely on consent as a basis for obtaining

evidence that was acquired before the consent was given, that there must be affirmative evidence (that is accepted by the trial judge) that it was the intention of the person giving consent to include within the scope of that consent the earlier official conduct.

That is not the only rule that this court could have adopted. We could have ruled that, in the absence of any evidence to the contrary, a consent applied retrospectively as well as prospectively. But I wholeheartedly concur in the adoption of the rule that we announce today, because that rule better comports with the well-recognized principle that, in the absence of a warrant, the state bears the burden of proving the existence of an exception to the warrant requirement. *See, e.g., State v. Paulson*, 313 Or 346, 351-52, 833 P2d 1278 (1992) (demonstrating application of the foregoing principle with respect to proof of voluntariness of a consent under Article I, section 9).

This brings me to my second point. The state in this case relies on certain passages in *State v. Quinn*, 290 Or 383, 623 P2d 630 (1981). The court today goes to some length to distinguish *Quinn*. 319 Or at 220-21. The distinction that the court draws may be valid, but it leaves the impression that *Quinn* remains a valid statement of search and seizure law that may be relied on in future. I am not so sure of that proposition.

*Quinn* was a case in which the police conducted an unlawful search of the defendant's impounded car. Evidence discovered during that unlawful search implicated the defendant in a murder. Police officers then asked the defendant for consent to search his car; the defendant gave it. The officers seized the evidence that had been discovered earlier and, with the help of that evidence, were able to persuade the defendant to confess to the murder. The defendant challenged the admissibility of his confession, on the ground that it was the fruit of an illegal search.

The court rejected the defendant's argument, stating:

> "An otherwise valid consent search may nevertheless be invalid if it is tainted as a result of earlier unlawful police conduct. This consent follows an unlawful search. The police

knew about and sought the underwear due solely to their observations during that search. Although the underwear might not have come to light but for the earlier search, it is also true that defendant was unaware at the time he gave consent that the underwear had been found. That fact did not in any way affect defendant's decision to give or withhold his consent. The next issue, therefore, is whether unlawful police activity which leads the police to seek defendant's consent to search, but does not influence the defendant in · giving that consent, taints the consent so as to require exclusion of the fruits of the consent search."

*State v. Quinn, supra,* 290 Or at 394. The court then went on to hold that the evidence at issue need not be suppressed because, while that evidence "might not have come to light had the officer not reached under the car seat, * * * the police [did not seek] * * * defendant's consent to search * * * by exploitation of that illegal discovery." *Id.* at 396.

The foregoing conclusion seems to me to approach being (and it may in fact be) unsupportable. So far as the *Quinn* opinion demonstrates, the officers would never have asked the defendant for permission to search the car, had it not been that their attention was directed to him and the car by the result of the earlier, illegal search. A more direct exploitation of illegal government activity would be difficult to posit.

Because its analysis of the search and seizure issue is so suspect, it probably would be unwise for a party in the future to place much reliance on that portion of *Quinn.* Today's decision, although it distinguishes the case, does nothing to imply that, were the court required to address the issue, we would adhere to the *Quinn* search and seizure analysis.

I concur.