Argued and submitted November 26, 1997, reversed and remanded for new trial
March 18, 1998

## STATE OF OREGON,
*Respondent,*

*v.*

## AMBER MARIE EDGELL,
*Appellant.*

## (CR 95-324; CA A94135)

956 P2d 988

Diane L. Alessi, Deputy Public Defender, argued the cause and filed the brief for appellant. With her on the brief was Sally L. Avera, Public Defender.

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau, Judge, and Leeson, Judge pro tempore.

LEESON, J. pro tempore.

### LEESON, J. pro tempore.

Defendant appeals from the judgment entered after her conviction for possession of a controlled substance. ORS 475.992(4). We review for errors of law, ORS 138.220, and reverse.

On October 21, 1995, defendant was one of three passengers in a car driven by Dunn. Dunn made an unsafe left turn and subsequently was stopped by Wasco County Deputy Puddy for careless driving. ORS 811.135. Puddy told Dunn of the reason for the stop and asked to see her driver license and registration. After reviewing those documents, Puddy wrote a citation for careless driving, turned off his patrol car's overhead lights, and returned to stand behind the driver's side mirror. Puddy gave Dunn the citation, her driver license, and registration and then told her, "You're free to go." He paused for a moment and then asked Dunn if there were any drugs in the car. Dunn said no. Puddy then asked Dunn if he could search the car and told her that she did not have to consent. Dunn asked her passengers if they thought she had to consent. One passenger said that she had to consent, and defendant told her that she did not have to consent. Dunn told Puddy that she did not have anything to hide and signed a consent to search form.

Puddy asked all four occupants of the car to get out, and he directed them to stand at a location that was five-to-fifteen feet away. By that time, three more police officers had arrived in two marked police cars to provide cover for Puddy by watching the four occupants. Puddy searched all four occupants and ordered them to empty their pockets. Puddy then searched the car. Puddy found a cloth, drawstring, purse-like bag on the floor of the back seat and dumped out its contents. A ziplock bag containing a white, crystalline substance fell out of the bag. Puddy held up the cloth bag so that the occupants could see it and asked whose it was. Defendant said that it was hers. Puddy then held up the ziplock bag and asked her what it contained. Defendant replied, "Dope." The crystalline substance tested positive for methamphetamine, and defendant was arrested for possession of a controlled substance. At trial, defendant moved to

exclude the evidence and her statements because Puddy exceeded the scope of the stop under ORS 810.410 by asking for consent to search and because Puddy did not obtain valid consent to search defendant's bag. The trial court denied the motion. In its written opinion it declared:

"Ms. Dunn did not have [actual authority to consent to the search of the bag], and the record will not support findings leading to a contrary conclusion. [Defendant], of course, had the authority to consent to a search of the brown bag because it was hers.

"* * * In the present case, the historical facts are that [defendant] was aware that Ms. Dunn consented to a search of her car, was aware that she could refuse to consent, left her bag in the car during the search, and had the opportunity to object. That is consent."

Defendant was convicted for possession of a controlled substance.

██     On appeal, defendant assigns error to the trial court's denial of her motion to suppress. Because it is dispositive, we write only to address defendant's contention that Puddy did not obtain valid consent to search defendant's bag. Defendant contends that Dunn did not have actual authority to give valid consent to the search of defendant's bag and that defendant's silence as the search progressed did not "equate to consent." The state responds that this case is controlled by *State v. Patrick*, 87 Or App 430, 433, 742 P2d 690 (1987), that the burden was on defendant to object to any search and that, by her silence, defendant consented to the search of her bag.

██     The state, of course, bears the burden of proving the lawfulness of a warrantless search. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991); *State v. Arnold*, 115 Or App 258, 261, 838 P2d 74 (1992), *rev den* 315 Or 312 (1993). Voluntary consent is a recognized exception to the warrant requirement, and the state bears the burden of proving that consent was obtained validly and voluntarily. *State v. Hadley*, 146 Or App 166, 172, 932 P2d 1194 (1997); *Arnold*, 115 Or App at 261-62. Article I, section 9, of the Oregon Constitution requires that if a third party gives consent to search, that person must have actual authority to do so. *State v. Will*, 131 Or App 498, 504, 885 P2d 715 (1994).

■     The trial court found, and the state does not dispute, that Dunn did not have actual authority to consent to the search of defendant's bag. For that reason, *Patrick* does not aid the state here. In *Patrick*, the defendant stood by silently as his father consented to a search of the defendant's bedroom in the family home. We held that the defendant, "by his failure to object to his father's *apparent authorization* of the search of his room, consented to it." *Patrick*, 87 Or App at 433 (emphasis supplied). Since our opinion in *Patrick*, we have held that Article I, section 9, of the Oregon Constitution requires third-party consent to be based on actual authority. *Will*, 131 Or App at 504-05; *State v. Lynch*, 94 Or App 168, 171-72, 764 P2d 957 (1988). Contrary to the state's argument, Dunn's actual authority to consent to a search of the car did not give her actual authority to consent to a search of defendant or her belongings. *Lynch*, 94 Or App at 171; *State v. Williams*, 48 Or App 293, 297-98, 616 P2d 1178 (1980). Because Dunn did not have authority to consent to the search of defendant's bag, it cannot be said that defendant was aware of Dunn's consent and thus, that defendant consented by her silence. In arriving at a contrary conclusion, the trial court relied on cases that are no longer good authority in light of recent decisions, cited above, that Article I, section 9, requires that third-party consent be based on actual authority. It is undisputed that Puddy did not seek, or obtain, defendant's actual authority to consent to the search of her bag.

Nonetheless, the state contends, the evidence is admissible under Oregon Laws 1997, chapter 313, section 1, which was enacted by the legislature to implement Ballot Measure 40.[1] Section 1 provides, in part:

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1)   The United States Constitution *or the Oregon Constitution*[.]" (Emphasis supplied.)

---

[1] Senate Bill 936 was signed by the governor and became effective on June 12, 1997. Or Laws 1997, ch 313.

Ballot Measure 40 is the criminal code revision popularly known as the Victims' Rights Initiative. It requires, among other things, that Article I, sections 9 and 12, of the Oregon Constitution, "not be construed more broadly than the United States Constitution."

Because Puddy's actions violated the Oregon Constitution, the evidence is not admissible under section 1 of chapter 313. *See also State v. Nielsen,* 147 Or App 294, 296, 936 P2d 374 (1997) (we do not address Ballot Measure 40 issues until the question of its constitutionality has been resolved by the Supreme Court).

Reversed and remanded for new trial.