Argued and submitted November 26, 2002, reversed and remanded for new trial
February 19, 2003

# STATE OF OREGON,
*Respondent,*

*v.*

# PATRICIA CAROL DOYLE,
*Appellant.*

## 99CR1288MS; A112839

63 P3d 1253

David E. Groom, Acting Executive Director, Office of Public Defense Services, and Meredith Allen, Deputy Public Defender, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Kaye E. McDonald, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

Defendant appeals from her convictions for possession, delivery, and manufacture of a controlled substance. In her sole assignment of error, defendant challenges the trial court's denial of her motion to suppress evidence found during a search of her motel room. The trial court made extensive findings of fact. Defendant does not challenge those findings; therefore, they bind us on appeal. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). We review the court's legal conclusions for errors of law, *id.*, and reverse and remand.

On October 23, 1999, Officer Craig of the Bend Police Department was dispatched to a motel based on an anonymous report that drug activity was taking place "in the room directly below room 153." When Craig arrived at the motel, the desk clerk told him that room 147 was directly below room 153. The clerk also told Craig that room 147 was registered to defendant and that the registration form provided for two people to be staying in the room.

At Craig's request, two backup officers were dispatched to the motel. The officers, Gregory and Grant, accompanied Craig to the door of room 147. Craig knocked on the door. Defendant answered the door but did not open it fully. She stood in a position to block Craig's view of the interior of the room and immediately stated to the other occupants, "See, I told you that you were too loud." The officers did not enter the room and, within a few minutes, left the area of the door. Defendant shut the door.

Craig then spoke with the motel housekeeper, who occupied a room adjacent to room 147. The housekeeper told Craig that she had observed nothing unusual, except that she had seen a male and female enter the room, stay a short time, and leave. She stated that she recognized the male as someone she had heard was involved in the sale of drugs.

The three officers discussed the situation and determined that they did not have probable cause to obtain a search warrant or make a warrantless entry into defendant's room. They decided to conduct a "knock and talk," a strategy in which an officer

"goes to the door of a subject's residence with the intent [of] contacting the subject and talking with [him or her] about the police concerns. The officer also is hopeful that during the knock and talk the subject will talk with the officer, allow a search or otherwise cooperate with the police inquiry."

The officers decided to tell the occupants that they had come to the motel to investigate a complaint about drug activity occurring in the room. They returned to the door of room 147, and Craig knocked on the door. Christa Cardonia opened the door. Craig asked her if the officers could come into the room and speak with the people inside. Cardonia fully opened the door, stepped aside, and gestured for the officers to enter the room.

Craig walked into the room and stood with his back to the wall. Four people were inside the room. A man, Doyle, was sitting on the bed watching television. Another woman, Wilcox, was standing on the far side of the bed. Cardonia walked back into the room and remained standing. Defendant was standing in the vanity area, near the bathroom, in a manner that blocked Craig's view of the vanity area. Grant entered the room and stood near the door. Gregory stood several feet inside the entry way and had an unobstructed view of the vanity area.[1] Gregory saw something inside a multicolored bag in the vanity area. Gregory also saw defendant take a small dark object out of her purse and place it in the left pocket of her pants. Gregory then asked defendant if he could talk to her, and she agreed. Gregory told defendant that he had seen, in plain view inside the multicolored bag, marijuana pipes and two glass ampules that contained a white powder residue. Gregory asked defendant if he could look inside the bag, and defendant consented. Gregory asked defendant whom the bag belonged to, and she told him that she had found it in a trash can.

Gregory had extensive training and experience in narcotic identification and investigation. He recognized the white powder in the bag as a controlled substance. He then asked if there were weapons in the room. Defendant told him

---

[1] The trial court found that the initial movement of the officers within the room was "for security purposes and in accordance with good police practice."

that there was a gun in the room, and she moved toward its location. Gregory blocked defendant from getting the gun, then arrested her. After advising defendant of her *Miranda* rights, Gregory asked her for consent to search the room. Defendant was nervous and told Gregory, "Well, you might as well. You're going to anyway."

Gregory told defendant that she could withhold consent and that the police would honor her decision. He told her that he could seek a search warrant and that a judge might grant or deny that request. Defendant consented to allow the officers to search the room. She also specifically consented to a search of her purse, her front pocket, and a black zippered bag inside the purse. In addition to the powder that he had found in the glass ampules, which proved to be methamphetamine, Gregory found almost a quarter pound of methamphetamine in the black zippered bag, as well as other evidence of drug offenses.

The officers were in uniform and were wearing badges. Their weapons remained holstered throughout their encounter with the occupants of the room. The trial court found that the atmosphere in the room was calm and that "there were no threats, no flagrant misconduct, no coercion, no promises."

Defendant was charged with possession, delivery, and manufacture of a controlled substance. She moved to suppress the evidence that the officers found in the motel room. The trial court denied the motion and, after a trial to the court on stipulated facts, convicted defendant of each of the three charged offenses. As noted, on appeal, she assigns error only to the denial of her motion to suppress.

■ Defendant argues that the warrantless searches of her motel room and personal effects were unreasonable under Article I, section 9, of the Oregon Constitution.[2] Defendant concedes that she consented to the searches, and she

---

[2] Defendant does not explicitly analyze the issue as one involving two searches. However, it is readily apparent that Gregory conducted two separate searches: first, he examined the contents of the multicolored bag and, second, he searched the entire room, including defendant's other personal effects. He obtained separate consents from defendant for both searches.

does not contend that her consent was involuntary.[3] However, she argues that Cardonia did not have actual authority to consent to the police officers' initial entry into the room, that the entry was thus unlawful, and that "all evidence obtained inside the room was fruit of the poisonous tree." The state responds that suppression properly was denied on one of two grounds: (1) defendant consented to the entry through her conduct; or (2) defendant retroactively consented to the officers' entry, and the officers did not exploit any illegality arising from their initial entry in seeking defendant's consent to search the room and her personal effects.

The state does not argue that Cardonia had actual authority to consent to the officers' entry into the motel room. *See State v. Ready*, 148 Or App 149, 153-55, 939 P2d 117, *rev den*, 326 Or 68 (1997) (third party consent to enter defendant's premises must be based on actual, not apparent, authority). Accordingly, the question of whether the officers lawfully entered the room reduces to whether or not defendant consented to their entry.

Defendant urges that she did not consent to the officers' entry. She primarily relies on this court's decision in *State v. Edgell*, 153 Or App 108, 956 P2d 988 (1998). In *Edgell*, the defendant was one of three passengers in a car. A police officer stopped the car and obtained the driver's consent to search the car. The officer found a purse-like bag inside the car, emptied it, and found a controlled substance inside. The officer then learned that the bag belonged to the defendant. The defendant appealed from her conviction for possession of a controlled substance, arguing that the car's driver lacked authority to consent to a search of her bag. The state argued that the driver's undisputed actual authority to consent to a search of the car necessarily included authority to consent to a search of the defendant's bag. The state also asserted that "the burden was on [the] defendant to object to any search and that, by her silence, [the] defendant consented to the search of her bag." *Id.* at 111. We reversed the

---

[3] Under Article I, section 9, a warrantless search is deemed unreasonable unless it is justified by a recognized exception to the warrant requirement. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). Consent is an exception to the warrant requirement. *State v. Ready*, 148 Or App 149, 152-53, 939 P2d 117, *rev den*, 326 Or 68 (1997).

trial court's denial of the defendant's motion to suppress the evidence found in the bag. We reasoned:

> "Contrary to the state's argument, [the driver's] actual authority to consent to a search of the car did not give her actual authority to consent to a search of defendant or her belongings. Because [the driver] did not have authority to consent to the search of defendant's bag, it cannot be said that defendant was aware of [the driver's] consent and thus, that defendant consented by her silence."

*Id.* at 112 (citations omitted).

This case is distinguishable from *Edgell*. First, Cardonia did not purport to consent to a search of defendant's property. Defendant herself consented to the search; Cardonia merely consented to the officers' initial entry into the room. Thus, unlike in *Edgell*, the question of a third party's authority to consent to a search of another person's property is not at issue here. Second, the holding in *Edgell* followed from our unwillingness to endorse the extension of a third party's actual authority to consent to a search of broader premises to include authority to consent to a search of a defendant's separately owned property situated within the confines of those premises. It is understandable that the defendant in *Edgell* could not reasonably be deemed to have consented by silence to a search of her belongings merely because she heard the driver consent to a search of the driver's own property, the vehicle. As we concluded, authority to search one did not logically include authority to search the other. By contrast, in this case, the issue is the lawfulness of the officers' entry into premises controlled by defendant. We focus on Cardonia's conduct only to the extent that it is relevant to the determination of whether defendant herself consented to the officers' entry.

■ The state argues that, by her conduct, defendant consented from the outset to the officers' entry. It notes that defendant was present in the room when Cardonia answered the door, she did not stop Cardonia from answering the door, and she did not object when Cardonia gestured for the officers to enter. Defendant's silence, the state reasons, amounted to concurrent consent to the officers' entry. We disagree. At most, in failing to immediately object, defendant

acquiesced in the officers' entry. Her silence did not establish that she had consented to that entry from the outset. *See State v. Guzman*, 164 Or App 90, 99, 990 P2d 370 (1999), *rev den*, 331 Or 191 (2000) (mere acquiescence in police conduct does not constitute a voluntary consent); *see also State v. Freund*, 102 Or App 647, 652, 796 P2d 656 (1990) (consent requires a reasonable opportunity to make a choice to consent).

The state next argues that defendant retroactively consented to the officers' entry. The state notes that defendant did not object to the officers' presence at any time after they entered the motel room and that she later voluntarily consented to the search of the entire room and her personal effects located within it. The state relies on *State v. Weaver*, 319 Or 212, 221-22, 874 P2d 1322 (1994), where the Supreme Court stated that the scope of a defendant's consent to a search could "relate back" to validate an otherwise unlawful earlier search where there is evidence "that the person giving the consent intended the consent to be retroactive." Defendant replies that, in *Weaver*, the court held that evidence that police unlawfully had seized before the defendant signed a written consent to a search must be suppressed in the absence of any "evidence in the record indicating that [the] defendant intended his consent to be retroactive." *Id.* Likewise, here, defendant argues, there is no evidence in the record indicating that, by her silence in the face of the officers' presence in her room and by her subsequent consent to either search, she intended retroactively to consent to the officers' initial entry.

We need not decide whether defendant "retroactively" consented to an unlawful police entry. If defendant did so in the manner asserted by the state, she did so by failing to object to the officers' presence after they entered the room *and* by consenting to the searches of the room and her belongings. Thus, the state's retroactive consent argument coalesces analytically with the issue of whether defendant validly consented to the searches, an issue which, in turn, depends on whether defendant's consents to the searches were the products of police exploitation of the initial unlawful entry.

■ ■ Accordingly, we consider whether, in obtaining defendant's consent to the searches, the officers exploited their initial unlawful entry. *See State v. Rodriguez*, 317 Or 27, 39-40, 854 P2d 399 (1993) (holding that unlawful police conduct will render evidence obtained in a later consent search inadmissible when the police exploit—that is, take advantage of—the circumstances of their unlawful conduct to obtain that consent). Defendant had the burden to establish a factual nexus between the evidence she seeks to suppress and the prior police illegality. *State v. Cardell*, 180 Or App 104, 114-17, 41 P3d 1111 (2002). That nexus is one of common sense to be considered under the facts and circumstances of the particular case. *Id.* at 114.[4]

■ The state reminds us that the officers had focused on defendant and her suspected drug activity before they entered the motel room. We have held that, to constitute exploitation, unlawful conduct must do more than provide the police with the opportunity to seek consent, "it must be the reason for seeking the consent." *State v. Lee*, 174 Or App 119, 124, 23 P3d 999, *rev den*, 332 Or 559 (2001); *State v. Stanley*, 139 Or App 526, 534, 912 P2d 948 (1996), *rev'd on other grounds*, 325 Or 239, 935 P2d 1202 (1997). Here, the officers intended to request consent to search for drugs when they initially sought to enter the motel room. In the absence of other relevant circumstances, that fact might lead to a conclusion that defendant's consents were not the product of exploitation.[5]

However, once inside the room, the officers observed evidence of illegal drug activities; they *then* requested

---

[4] If defendant met that initial burden, the state was required to establish that discovery of the evidence was inevitable. *Id.* However, the state makes no inevitable discovery argument in this case. Accordingly, our analysis ends with the issue of exploitation.

[5] A broad reading of cases such as *Stanley* and *Lee* might suggest that a determination that unlawful police conduct was not *the reason* for seeking consent would compel the conclusion that there was no exploitation, regardless of the existence of other factors that may have influenced the defendant's decision to give consent. However, as explained below, such a reading of those cases would be too broad in light of other appellate decisions holding, for example, that a defendant's knowledge, in giving consent, of information that the police have unlawfully obtained, can lead to the conclusion that the police took advantage of—that is, exploited—the unlawful conduct.

defendant's consent to search the multicolored bag and, eventually, the entire room. Indeed, the trial court found that, before Gregory's first request for consent to search, he told defendant that he had seen, "in plain view inside [the] open multicolored bag, marijuana pipes and two glass [ampules] that had a white powdery residue in them." Moreover, before he later asked defendant for consent to search the room itself, Gregory confronted her with the evidence that he had found in the bag and arrested her. In the case of both searches, in obtaining defendant's consent, Gregory traded on information that he had discovered as a result of his unlawful entry and, thus, exploited that entry. *See Rodriguez*, 317 Or at 40-41 (describing exploitation in terms of whether police are able to obtain consent to search by taking advantage of unlawful conduct); *see also State v. Ehret*, 184 Or App 1, 12, 55 P3d 512 (2002) (admissions made by the defendant that led to the discovery of incriminating evidence were obtained by questioning that included references to information that the police had learned during an illegal search of the defendant's person and, thus, were the product of exploitation).

■      True, before seeking defendant's consent to search the entire room, Gregory gave her *Miranda* warnings and, after she initially responded, "You might as well. You're going to anyway[,]" he informed her of her right to refuse. Further, the trial court found that Gregory made no promises or threats to induce her cooperation. However, that evidence tends to show that defendant's consent was voluntary, an issue that is not in dispute on appeal, not that the police did not trade on unlawfully obtained information in seeking and obtaining that consent. *See Rodriguez*, 317 Or at 38-39 (distinguishing between issues of voluntariness of consent and exploitation).

The Supreme Court's reasoning in *State v. Williamson*, 307 Or 621, 772 P2d 404 (1989), supports our analysis. In that case, during the stop of a pickup truck at an unlawful roadblock, the police smelled the odor of marijuana in the vehicle bed. The defendant initially declined to consent to a search. To obtain his cooperation, the police told the defendant that, unless he consented, they would detain the pickup until they could obtain a search warrant. The defendant then consented, and the police discovered marijuana.

The Supreme Court held that the marijuana must be suppressed because the police "traded on" their unlawful conduct. The court explained:

> "[T]his defendant told the officers that he did not want them to search the truck or its contents; he wanted to leave. It was only after that wish was denied that defendant began to weigh the consequences of consent against the alternative that the truck would be detained indefinitely while the officers sought a search warrant. In putting the choice to defendant in those terms, the officers * * * were trading on evidence that they had only by virtue of the unlawful roadblock."

*Id.* at 626.

Unlike in *Williamson*, defendant here did not initially decline to consent to a search. However, before defendant consented to the first search, Gregory told her that he had observed in plain view evidence of criminal activity in the bag and, before she consented to the second search, defendant knew that Gregory had found additional evidence in the bag. Further, by the latter time, defendant had been arrested for a drug offense. As she herself observed, her consent at that point arguably was academic. Under those circumstances, defendant faced similar choices to the one confronting the defendant in *Williamson*: whether to consent to an immediate search or wait for the issuance of a search warrant. Viewed in commonsense terms, those choices were markedly different from the choice defendant would have faced had the officers requested consent without having first gained unlawful entry into the room. Accordingly, defendant established the requisite factual nexus between the officers' unlawful entry and the evidence she seeks to suppress. As noted, the state makes no inevitable discovery argument. It follows that the trial court erred in denying defendant's motion to suppress.

Reversed and remanded for new trial.