Argued and submitted April 29, reversed and remanded October 27, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

FRANK A. MAZZOLA,
*Defendant-Appellant.*

Josephine County Circuit Court
05CR0011; A139257

242 P3d 674

Joshua B. Crowther, Senior Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Harry B. Wilson, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and David B. Thompson, Senior Assistant Attorney General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Edmonds, Senior Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Defendant appeals his convictions for possession of a controlled substance, *former* ORS 475.992(4)(a) (2003), *renumbered as* ORS 475.840(3)(a) (2005), and manufacture of a controlled substance, *former* ORS 475.992(1)(a) (2003), *renumbered as* ORS 475.840(1)(a) (2005), following a joint jury trial with his wife, Allisa Mazzola.[1] He assigns error to the trial court's denial of his motion to suppress evidence of an extensive marijuana growing operation on his property. In particular, defendant asserts that the trial court erred in determining that the police officers' warrantless entry into a mobile home, which, in turn, revealed the evidence of marijuana cultivation, was justified under the "emergency aid" exception to the warrant requirement. We agree with defendant and, further, reject the state's proffered alternative basis for affirmance. Accordingly, we reverse and remand.

We review the trial court's denial of defendant's motion to suppress for errors of law, *State v. Chambers*, 226 Or App 363, 365, 203 P3d 337 (2009), and limit our review to the facts available to the trial court when it decided that motion. *State v. Saunders*, 221 Or App 116, 118, 188 P3d 449, *rev den*, 345 Or 416 (2008). We accept the trial court's findings that are supported by sufficient evidence in the record and presume, with regard to pertinent and disputed facts for which there are no express findings, that the trial court decided those facts in a manner consistent with its ultimate conclusions. *State v. Baker*, 237 Or App 342, 344, 240 P3d 735 (2010).

In May 2004, two officers from the Josephine County Sheriff's Office, Deputy Hubbard and Corporal Justima, came to defendant's property to investigate a 9-1-1 report about a domestic disturbance. According to the 9-1-1 caller, there was "yelling" and "door slamming" noises coming from defendant's property and "a history of guns as well as a history of possible drug use," although there was no indication that any shots had been fired. The caller also indicated that there were at least two children present.

---

[1] Allisa Mazzola also appeals. *See State v. Mazzola (A139255)*, 238 Or App 340, 241 P3d 769 (2010). In both cases, the evidentiary record and the issues raised with regard to the trial court's denial of their motion to suppress are identical.

When the officers arrived, they encountered defendant's wife, Allisa, outside the couple's log cabin with two of the couple's three children. Defendant's wife was "calm" and "cooperative." She explained to the officers that she and defendant had had a verbal disagreement about "home matters" but that the disagreement had ended. She also told the officers that the argument had been verbal and, indeed, neither she nor the children showed any signs of injury. The officers inquired about the whereabouts of defendant and the third child, who was not present. Defendant's wife explained that the child was at a birthday party and indicated that defendant was inside the mobile home, which was located about 15 feet away from the cabin.

At that point, the officers went to the mobile home to make "certain that nobody was hurt" and that defendant had not been "shot * * * and left to die" there. Loud music was blaring from the mobile home. When the officers approached the mobile home, they noticed a tray of small, wilted marijuana plants that appeared to have been discarded on the front porch and the odor of marijuana emanating about two feet from the front door, which was ajar. The officers loudly announced their presence, and Hubbard used his flashlight to rap on the doorframe and the metal siding of the trailer.

When there was no response, the officers—without a warrant or consent—entered. Once the officers entered the mobile home, the smell of marijuana became "overwhelming," and the officers could see marijuana plants under grow lights and evidence of additional marijuana cultivation in another room.

Defendant, who was inside the mobile home, met the officers in the living room and turned off the music. Defendant confirmed that he and his wife had had a verbal disagreement and that it was now resolved. Hubbard then expressed his concern "about the number of marijuana plants [he] was observing." Defendant explained that he was an Oregon medical marijuana cardholder, that his wife was a caregiver, and that he was also growing marijuana for another woman. Hubbard asked to inspect the medical marijuana cards, and defendant led Hubbard into another room, where one of the cards was posted. There, Hubbard saw

"[s]everal more plants and a complete grow operation." Hubbard again expressed his concern that defendant "was over the legal limit for both cardholders" and asked for permission to "inspect the rest of the residence and his operation." Defendant gave the officers permission to inspect the rest of the mobile home, yielding further evidence of illegal marijuana cultivation. After the officers had completed their inspection, Hubbard told defendant that he was "way over the limit," handcuffed him, and called for narcotics detectives to come to the scene.

One of the detectives who responded to that call, Detective Vorberg, advised defendant, who remained handcuffed, of his *Miranda* rights and asked him if he would consent to a search of the mobile home. Vorberg told defendant that he did not have to give his consent and answered various questions defendant had about whether he was going to jail and whether a warrant would be obtained. Defendant gave his verbal consent and also signed a written consent form. The officers then proceeded to seize and catalogue the marijuana that they had discovered following their initial entry and inspection. Defendant and his wife were subsequently charged with various crimes relating to the distribution, manufacture, and possession of marijuana.

■ Before their consolidated trial, defendant and his wife moved to suppress the marijuana evidence, arguing that the officers' initial warrantless entry into the mobile home was not justified under the "community caretaking" statute, ORS 133.033,[2] or the "emergency aid" exception to the warrant requirement,[3] and that defendant's consent to the search was

---

[2] ORS 133.033 gives police officers the authority to perform various "community caretaking functions," which are defined as "any lawful acts that are inherent in the duty of the peace officer to serve and protect the public," ORS 133.033(2), and specifically include:

"(a) The right to enter or remain upon the premises of another if it reasonably appears to be necessary to:

"(A) Prevent serious harm to any person or property;

"(B) Render aid to injured or ill persons; or

"(C) Locate missing persons."

ORS 133.033(2).

[3] Although ORS 133.033 gives officers statutory authorization to perform various community caretaking activities, including entering homes and other

either involuntary or was obtained by exploitation of the officers' unlawful entry. The state's primary argument was that the officers' initial entry was justified under ORS 133.033 and the emergency aid exception. In addition, the state countered the defendants' arguments pertaining to nonattenuation and argued that the evidence was subject to the inevitable discovery exception to the exclusionary rule.

The trial court concluded that the officers' initial entry into the mobile home was lawful because there was a "legitimate emergency" and, given that conclusion, further reasoned that defendant's subsequent consent was lawfully obtained:

"I also believe there was valid consent in this case. Just because there was an unwarranted entry into another person's home, I do not think that it necessarily takes away from a valid consent. It was exploiting legal police conduct and not illegal police conduct."

In sum, the trial court concluded that the officers' entry into the mobile home was justified under the emergency aid exception and did not reach the parties' inevitable discovery and exploitation arguments.[4]

On appeal, defendant challenges that determination. The state, in response, acknowledges that the officers' initial entry into the mobile home cannot be justified under the emergency aid exception and that the trial court erred in its conclusion in that regard. Nevertheless, the state contends that we should affirm the trial court's denial of suppression on the alternative ground that, because of the *Miranda* warnings and other circumstances, defendant's subsequent consent to the search was so attenuated from the

---

premises to perform certain kinds of searches, it does not create an exception to the warrant requirement. *State v. Martin*, 222 Or App 138, 146, 193 P3d 993 (2008), *rev den*, 345 Or 690 (2009). Rather, to be lawful, a warrantless community caretaking search of a home must meet both the criteria set out in ORS 133.033 and established constitutional standards. *Id.* at 142 n 2, 145-46.

[4] Although the trial court did not expressly state whether its decision was based on the community caretaking statute, ORS 133.033, or the emergency aid exception to the warrant requirement, or was predicated on both, in order for the officers' search to be "lawful" under ORS 133.033 and to deny suppression, the trial court must have determined that their entry comported with a constitutional exception to the warrant requirement, *see Martin*, 222 Or App at 146—and here the only such exception the state invoked was the emergency aid exception.

unlawful police conduct (*viz.*, the officers' warrantless entry and presence within the mobile home) as to justify denial of suppression.[5]

■ We begin with the lawfulness of the officers' warrantless entry into the mobile home. *See State v. Cox*, 212 Or App 637, 640, 159 P3d 352 (2007) (appellate court has an independent obligation to assess the correctness of a party's concessions regarding errors of law). For the following reasons, we accept, as well founded, the state's concession that the officers' conduct in that regard was unlawful.

■■ The elements of the emergency aid doctrine, as set out in *State v. Follett*, 115 Or App 672, 680, 840 P2d 1298 (1992), *rev den*, 317 Or 163 (1993), are as follows:

"(1) The police must have reasonable grounds to believe that there is an emergency and an immediate need for their assistance for the protection of life.

"(2) The emergency must be a true emergency—the officer's good faith belief alone is insufficient.

"(3) The search must not be primarily motivated by an intent to arrest or to seize evidence.

"(4) The officer must reasonably suspect that the area or place to be searched is associated with the emergency and that, by making a warrantless entry, the officer will discover something that will alleviate the emergency."

(Footnote omitted.) With respect to the first two elements, an officer's subjective belief that a "true emergency" exists must be substantiated by "objective indicia of a particular individual being in distress or of the presence of a potentially dangerous individual," suggesting that "immediate action was

---

[5] In respondent's brief, the state

"concedes that it would be difficult to justify the deputies' warrantless entry into defendant's mobile home under the emergency-aid exception, given the paucity of evidence in this record supporting the trial court's finding that the deputies reasonably believed that a life-threatening emergency requiring their immediate assistance existed at the time of the entry"

and makes no argument justifying the officers' entry on that basis. At oral argument, counsel for the state confirmed that the state is not disputing that the initial entry was unlawful and focused only on attenuation. The state does not reiterate the inevitable discovery contention that it raised in the trial court.

required to protect life." *State v. Burdick*, 209 Or App 575, 581, 149 P3d 190 (2006).

We addressed the application of those elements to circumstances highly analogous to those presented here in *State v. Salisbury*, 223 Or App 516, 196 P3d 1017 (2008). In *Salisbury*, the officer heard male and female voices yelling and screaming, and profanity coming from inside the defendant's apartment. *Id.* at 519. The yelling and screaming lasted for about five minutes. *Id.* The officer then called for backup, and, for a period of 15 to 20 minutes, the officers pounded on the door, announced their presence, and requested, then ordered, the defendant to open the apartment door. *Id.* at 520. Finally, when there was no response, the officers forced the door open and entered the residence.

On appeal, the defendant assigned error to the trial court's denial of his motion to suppress evidence discovered inside the residence, and we concluded that the emergency aid exception did not justify the officers' entry into the defendant's apartment. *Id.* at 524-25. In so holding, we reasoned that,

> "[s]ignificantly, the police did not testify that they heard any sounds of a physical struggle or an indication that an act of violence had occurred inside the apartment. Moreover, no occupant of the apartment requested assistance from the police, even though the police made their presence known over a significant time period. It is correct, as the state argues, that it could be inferred that, because the lights were turned off and there were no longer any sounds coming from the apartment, the screaming woman inside the apartment was unable to respond to their inquiries due to injury or restraint; however, that inference is counterbalanced by the inference that what the police heard was evidence of a domestic quarrel that did not require their intervention."

*Id.* at 524. In sum, we concluded that there was no objective evidence to substantiate the officer's subjective belief that the woman in the apartment had been harmed or was at risk of harm, which was necessary for the emergency aid doctrine to apply.

Here, as in *Salisbury*, there was no evidence that anything other than a verbal disagreement had occurred. The 9-1-1 caller reported hearing "yelling" and "door slamming," not sounds that would suggest a physical struggle or that weapons had been used. The officers' observations of defendant's wife and the children, who appeared calm and uninjured, corroborated the wife's account that no physical violence had ensued. *Cf. State v. Agnes*, 118 Or App 675, 677-79, 848 P2d 1237 (1993) (upholding warrantless entry under emergency aid exception where neighbor heard "banging" in addition to "yelling and screaming" and where woman who answered door appeared disheveled and frightened and officers could see upset furniture and the defendant, who appeared intoxicated and acted belligerent, through the doorway behind her). Indeed, unlike in *Salisbury*, it was apparent that the dispute had ended before the officers arrived.

Thus, in the circumstances here, the officers' subjective concerns did not justify their warrantless intrusion for the purposes of the emergency aid exception. However well-meaning the officers' motivation, their concerns were not objectively corroborated—and, indeed, were contradicted by overwhelming evidence that all that had occurred was a "domestic quarrel" that did not require the officers' intervention. *See Salisbury*, 223 Or App at 524; *see also Baker*, 237 Or App at 348 (holding that reports of yelling or screaming" coming from the residence and evidence that the woman who lived there had used a prearranged code word to alert a neighbor that she needed immediate police assistance, combined with the officers' observations of the couple having a verbal argument, did not justify warrantless entry into the residence). Because the emergency aid exception is inapposite, the officers' warrantless entry was unlawful.

■ We turn, then, to the state's alternative basis for affirmance—that intervening circumstances, including the rendition of *Miranda* warnings and Vorberg's admonition to defendant that he need not consent, so attenuated defendant's consent from the predicate unlawful conduct as to justify the denial of suppression. Before addressing the substance of that proffered alternative basis for affirmance, we pause to state our understanding of the content and contours of that contention.

As we understand it, the state's consent argument pertains solely to the consent that Vorberg elicited from defendant—and is not predicated on defendant's statements to Hubbard, when he gave Hubbard permission to inspect "the rest of" the marijuana growing operation in the mobile home. Further, we do not understand the state to advance the contention that the consent defendant gave to Vorberg operated *retroactively* to validate the officers' prior unlawful search of the premises in the manner addressed in *State v. Weaver*, 319 Or 212, 874 P2d 1322 (1994). Rather, the state's contention is that defendant's consent, as elicited by Vorberg, operated prospectively to authorize subsequent police conduct, validating the discovery of evidence after that consent was given.[6] Thus, the state's attenuation argument is framed in the classic construct described in *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), in which arguably attenuating circumstances occur between unlawful police conduct and a defendant's consent to search, with the latter, in turn, leading to the discovery of incriminating evidence.

With that understanding, the state's "attenuation" argument fails because the record discloses that most, and perhaps all, of the marijuana evidence that defendant seeks to suppress was discovered by the police *before* Vorberg elicited defendant's consent. Consequently, even if the state were correct with respect to the validity of defendant's consent—a matter that we do not reach[7]—suppression is still required as to the evidence discovered before the consent and any derivative evidence. *See id.* at 25.

Reversed and remanded.

---

[6] During oral argument, we expressed our understanding that the state was making "no argument about retroactive consent." Counsel for the state did not contradict that understanding or invoke precedents pertaining to retroactive consent.

[7] *See, e.g., State v. Ayles*, 348 Or 622, 237 P3d 805 (2010); *State v. Doyle*, 186 Or App 504, 63 P3d 1253, *rev den*, 335 Or 655 (2003).